B & T Distributors, Inc., Clarence Kingery, Gene Schilling *v.* Robert G. Riehle, Patricia L. Riehle, State of Indiana ex rel. B & T Distributors, Inc.

[No. 877S605. Filed August 25, 1977. Rehearing denied November 4, 1977.]

*John D. Raikos, Raikos, Martenet, Deal & Raikos,* of Indianapolis, for appellants.

*James W. Bradford,* of Indianapolis, *William C. Burns, Schultz, Ewan and Burns,* of Lafayette, for appellees.

PIVARNIK, J.—This cause comes to us on a petition to transfer by plaintiffs-appellees Robert and Patricia Riehle from the First District, Court of Appeals. The trial court awarded plaintiffs-appellees damages of $12,635.05, cancelling an agreement whereby defendants-appellants Kingery and Schilling were to purchase 450 shares of common stock from the Riehles. The trial court ordered that Kingery and Schilling's down payment of $18,900 be forfeited, and found that Kingery and Schilling were entitled to no relief on their counterclaim. The Court of Appeals reversed the trial court and remanded the cause with instructions to enter judgment for Kingery and Schilling, to order all consideration paid by Kingery and Schilling returned, together with 6% interest thereon from the date of payment, costs, and to award Kingery and Schilling reasonable attorney fees. *B & T Distributors, Inc.* v. *Riehle,* (1977) Ind. App., 359 N.E.2d 622. [See Appendix].

The Court of Appeals properly found that the anti-fraud provisions of the Indiana Securities Act applied to this transaction, and we adopt the opinion and findings of the Court of Appeals on that issue. However, we find the Court of Appeals was otherwise in error, and therefore grant transfer and reverse the Court of Appeals decision.

Under the provisions of the Indiana Securities Act, Ind. Code § 23-2-1-1 *et seq.* (Burns 1971), and under the evidence

of this cause, the trial court found that the Riehles did not make false representations or commit fraud and thus entered judgment in their favor. The Court of Appeals erred in its reversal of these findings.

The following facts are necessary for a resolution of this matter. Clarence Kingery was approximately 42 years of age and was employed as a mortgage banker for American Fletcher Mortgage Company during the time of this transaction. Gene Schilling was also in his early 40's and was employed as a national sales manager for the Schwab Safe Company for a period of approximately eight years. Kingery and Schilling decided to pool their resources and look for a business to buy for purposes of investment. They learned that Bob Riehle might be interested in selling B & T company, and approached him with regard to purchasing the same. There were many conferences between these parties in the following months prior to entering into the agreement in question in January of 1972. In December of 1971, the transcript discloses that there had been much discussion and disclosure of the assets, income, and disbursements of the B & T company. Most of the conferences were at the instance of Kingery and Schilling, and by negotiation they finally agreed on the price. All of the parties were represented by counsel during all of these negotiations, and the contracts entered into were prepared by attorneys and were signed by all the parties upon consultation with their attorneys.

The trial court heard all of the witnesses in this cause and had before it all the exhibits and documentation in evidence. Among the findings of fact by the trial court, findings 7 and 8 are two that are pertinent here:

"(7)  That the individual plaintiffs made no representations of a material nature to the individual defendants which were false or known to be false prior to the execution of the agreement and that the individual defendants Clarence Kingery and Gene Schill-

ing did not rely on any of such representations as such did not exist.

(8) That the transaction as to the sale of B & T Distributors Inc. by the plaintiffs Robert G. Riehle and Patricia L. Riehle to Clarence Kingery and Gene Schilling was an arms length transaction in all respects."

It is fundamental that in reviewing actions of a trial court, an appellate court can neither weigh the evidence nor determine the credibility of the witnesses. *Soft Water Utilities, Inc.* v. *LaFevre,* (1974) 159 Ind. App. 529, 308 N.E.2d 395; *Nugent* v. *Smith,* (1972) 153 Ind. App. 484, 287 N.E.2d 899; *Englebrecht* v. *Tri-State Franchisers Inc.,* (1972) 153 Ind. App. 350, 287 N.E.2d 365. The considerations of the weight of the evidence and the credibility of the witnesses are left exclusively to the trier of the facts, in this case the trial judge, and they will not be disturbed on appeal if there is evidence in the record to sustain them. Neither the Court of Appeals nor the Indiana Supreme Court can reverse a trial court in its determination and finding of the facts and judgment thereon, unless the record discloses there were no facts nor inferences based therefrom to sustain its judgment.

Riehle testified that purchases and sales of beer products, by law, had to be for cash and that there would be no accounts receivable. For the same reason, there could be no major accounts payable of any size. He testified that there would be a bank account, fixtures and equipment, and perhaps material handling equipment. There were no bank loans, and the books of account of B & T Distributors, Inc., grossing $144,000 a year, did not amount to much under the circumstances. The books of account were largely the checkbook of B & T. The transcript of the testimony of the witnesses reveals that there was much exchange and discussion of the income of the company, together with the disbursements and expenses for operating that were per-

tinent to the running of the business. Riehle testified that very little other than that could be considered "the books of the company," and that Kingery and Schilling were well aware of this. It was impossible in December of 1971 to have a full report of the activities for the latter half of 1971, as this could not be prepared until some months later after the close of the year. Again it appears that all parties were aware of this and willing to execute this contract in spite of it. The trial court found that no false representations of fact were made to Kingery and Schilling. For the trial court to have gone further, and state in its findings that there was no omission to disclose pertinent facts, would have been in this cause nothing more than making the same statement in reverse. The facts amply show that this was a contract entered into by adults who were experienced businessmen and represented by counsel at every stage of the negotiations. Though there are conflicts in the evidence as to some of the facts involving this transaction, it appears that there were ample facts upon which the court could find that all of the parties entered into this contract willingly and fully advised of what it entailed. There is therefore no reason to disturb the judgment of the trial court.

The judgment of the trial court is affirmed.

Hunter, Prentice, JJ., concur, Givan, C.J., dissents; DeBruler, J., finds the opinion of Judge Lowdermilk to be correct in all respects and therefore dissents.

## APPENDIX

Lowdermilk, Judge.

This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

Defendants-appellants Clarence Kingery, Gene Schilling and B & T Distributors, Inc. (Kingery and Schilling), appeal from the adverse judgment of the trial court awarding plain-

tiffs-appellees, Robert G. and Patricia L. Riehle (Riehle), damages of $12,635.05, cancelling an agreement whereby Kingery and Schilling were to purchase 450 shares of common stock from the Riehle's, declaring that Kingery's and Schilling's down payment of $18,900.00 be forfeited, and finding that Kingery and Schilling were entitled to no relief on their counterclaim.

We reverse.

The essential facts necessary for our disposition of this appeal are as follows:

In September, 1971, Kingery approached Mr. Riehle in an effort to purchase B & T Distributors, Inc., and a series of meetings ensued. At one of these meetings Riehle made an estimated profit, and loss statement from his checkbook for Kingery and Schilling which showed a profit for the first six (6) months of 1971 of $5,824.81, and a gross profit margin on sales of approximately 33.4%.

In January, 1972, the parties executed a contract for the purchase and sale of B & T Distributors, Inc. The contract provided, *inter alia,* that the Riehles would transfer the stock of B & T Distributors, Inc. for a consideration of $70,000.00. Kingery and Schilling were to pay $18,900.00 down, and in addition pay to the Riehle's $12,635.05, said sum representing the value of the inventory and certain loans made to the corporation by the Riehles.

Kingery's and Schilling's profit and loss statement for the first six (6) months of 1972 showed a net loss of approximately $119.03, and a gross profit margin on sales of approximately 26.2%.

In July, 1972, Kingery and Schilling sought to rescind their contract with the Riehles claiming they had been defrauded. The Riehle's thereupon commenced this action by filing their complaint. The trial court's finding of fact which is central to this appeal provided as follows:

"* * *

7. That the individual plaintiffs made no representations of a material nature to the individual defendants which were false or known to be false prior to the execution of the agreement and that the individual defendants Clarence Kingery and Gene Schilling did not rely on any of such representations, as such did not exist.

* * *"

Kingery and Schilling argue that the trial court committed reversible error by entering judgment for the Riehles and, by failing to grant to them the remedy of rescission on their counterclaim on either a theory of common law fraud or fraud as defined under the Indiana Securities Law.[1] The Riehle's argue there was no fraud perpetrated upon Kingery or Schilling, and, that the Indiana Securities Act was not applicable to their transaction.

Specifically, the Riehles contend that their sale of B & T Distributors, Inc. securities to Kingery and Schilling was exempt from the anti-fraud provision of the Indiana Securities Act under IC 1971, 23-2-1-2(b)(1) and IC 1971, 23-2-1-2(b)(10).

IC 1971, 23-2-1-2(b)(1) and 23-2-1-2(b)(10) provide as follows:

"* * *

(b) The following transactions are exempted from section 201[23-2-1-3]:

(1) any isolated nonissuer transaction, whether effected through a broker-dealer or not; . . .

(10) any offer or sale of a security if, during any period of twelve [12] consecutive months which includes the date of such offer or sale, the offeror or seller has not directed offers to sell securities of the same class to more than twenty [20] persons in this state, excluding in determining the number of such persons, persons receiving offers otherwise exempted by this section 102 and also excluding persons receiving offers of such securities made after registration thereof under this act, whether or not the offeror, seller, or any of the offerees or buyers are then present in

---

1. IC 1971, 23-2-1-1 et seq. (Burns Code Ed.)

this state and if (A) each buyer in a sale exempted under this subsection represents in writing to the seller that he is purchasing such securities for investment, and (B) no commission or other remuneration is paid or given for or on account of a sale exempted under this subsection (10); but the commissioner may by rule or order, as to any security or transaction or any type of security or transaction, [withdraw or] further condition this exemption, or increase or decrease the number of offerees permitted, or waive the conditions in clauses (A) and (B) with or without the substitution of a limitation on remuneration;

\* \* \*"

As can be seen from section (b), *supra,* the transactions described in subsections (1) and (10), *supra,* are exempt only from the provisions of IC 1971, 23-2-1-3 (Burns Code Ed.) which provides as follows:

"Registration requirement.—It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act [23-2-1-1—23-2-1-25] or (2) the security or transaction is exempted under section 102 [23-2-1-2]. . . ."

IC 1971, 23-2-1-12 (Burns Code Ed.), which is a separate and distinct Part IV of the Indiana Securities Act describing prohibited transactions, provides as follows:

"Prohibited practices with respect to sales and purchases. —It is unlawful for any person in connection with the offer, sale or purchase of *any security,* either directly or indirectly, (1) to employ any device, scheme or artifice to defraud, or (2) to make any untrue statements of a material fact *or to omit to state a material fact necessary in order to make the statements made in the light of circumstances under which they are made, not misleading,* or (3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. . . ." (Our emphasis)

IC 1971, 23-2-1-19 (Burns Code Ed.) provides in pertinent part as follows:

"Civil penalty—(a) Any person who . . .
(2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a

material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue either at law or in equity, to recover the consideration paid for the security, together with interest at six per cent [6%] per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security and any income received on it, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six per cent [6%] per year from the date of disposition.

As can be seen from the statutes cited above our legislature did not seek to prohibit deceptive practices only as they related to transactions in *registered securities*. It would have been a simple matter for them to have so provided if desired. Rather, our legislature made it unlawful for the seller of *any security* to engage in any of the prohibited practices described in IC 1971, 23-2-1-12, *supra*. Therefore, it is the opinion of this court that the Riehles' argument that their securities transaction with Kingery and Schilling was exempt from the anti-fraud provisions of the Indiana Securities Act is without merit.

We think it important to emphasize that not only a material *misrepresentation* of fact concerning a security is fraudulent, also, *omitting* to state a material fact needed to clarify statements made concerning a security is likewise a prohibited practice under IC 1971, 23-2-1-12, *supra*.

In the case at bar the record discloses that Mr. Riehle furnished Kingery and Schilling a profit and loss statement which portrayed for the first six (6) months of 1971 B & T Distributors, Inc. with a profit of $5,824.81, and a gross profit margin on sales of 33.4%. B & T Distributors, Inc. was not selling any beer at premium prices. Robert Huth, a Certified

Public Accountant for two beer wholesalers, testified on direct examination as follows:

"* * *

Q Could their markup have possibly been thirty-three or thirty-four percent without such a premium beer?

A It could not have been.

Q Would a person in the business who had owned the business know this by fact?

A He could, yes.

* * *"

The record reveals that Kingery and Schilling sought to obtain the books and records of B & T Distributors, Inc., but were unsuccessful. For example, Mr. Riehle testified during cross-examination as follows:

"* * *

Q Did they see the books of account of B & T Distributors, Inc., at any time?

A As far as I know, they didn't, no.

Q Did they ask for those?

A They didn't demand it, no. If they had of, they probably wouldn't have signed the contract.

Q In other words, your testimony is that had they seen the books and records, they would not have signed the—

A I don't know. It wasn't that important at the time. Certainly was no big issue [sic].

* * *"

The findings of fact adopted by the trial court deal only with *false representation* of fact and are completely silent as to whether the Riehles *omitted* to disclose to Kingery and Schilling any material facts. See, Finding of Fact No. 7, *supra*.

It is the opinion of this court that the Riehles' failure to turn over the books of account of B & T Distributors, Inc. to Kingery and Schilling upon request was an omission to state material facts necessary to make the statements made

by Mr. Riehle concerning profits and profit margin on sales not misleading under IC 1971, 23-2-1-12, *supra*.

Therefore, we reverse and remand this case to the trial court with instructions to enter judgment for Kingery and Schilling, to order all consideration paid by Kingery and Schilling returned together with [6%] interest thereon from the date of payment, costs, and to award Kingery and Schilling reasonable attorney fees.

Robertson, C.J., and Lybrook, J., concur.

NOTE.—Reported at 266 N.E.2d 178.