BUREAU OF MOTOR VEHICLES OF THE STATE OF INDIANA AND RALPH W. VAN NATTA, COMMISSIONER v. PENTECOSTAL HOUSE OF PRAYER, INC., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED.

[No. 378S46. Filed October 10, 1978.]

*Theodore L. Sendak,* Attorney General, *Victoria R. Van Duren,* Deputy Attorney General, for appellant.

*Benjamin Crawford, Felling, Tabor & Crawford,* of Terre Haute, *William K. Teeguarden,* of Terre Haute, for appellee.

PIVARNIK, J.—This appeal arises from the appellee's action for declaratory and injunctive relief in the Vigo Superior Court. This court entertains jurisdiction pursuant to Ind. R. Ap. P. 4(A)(8) as the trial court found Ind. Code § 9-1-4-37(b) (Burns Supp. 1977) to be an unconstitutional infringement upon the appellees' right to freely exercise their religious beliefs.

On July 20, 1977, appellees, Pentecostal House of Prayer, Inc., filed a complaint against the Indiana Bureau of Motor Vehicles seeking to have the photograph requirement of Ind. Code § 9-1-4-37(b) (Burns Supp. 1977), declared unconstitutional insofar as it applied to members of the plaintiff-church. This statute reads as follows:

"(a) The department, shall upon proper application and the payment of the required fee, issue to every applicant qualifying therefore a permit or license as applied for.

(b) *Every such permit or license shall bear* thereon the distinguishing number assigned to the permittee or licensee and shall contain the name, age, residence address, a brief description, *and, with the exception of a learner's permit, a photograph of such person for the purpose of identification,* and such additional information as the commissioner shall deem necessary, also a space for the signature of the permittee or licensee." (emphasis added)

The church also sought to enjoin the Bureau from enforcing the statute against the plaintiff-class. After a preliminary injunction was ordered, the trial court allowed the National Committee for Amish Religious Freedoms to intervene on behalf of the Beachy or, "Black Car," Amish sect which had been previously granted an exemption to the photograph requirement which exemption was later revoked by the Bureau.

The appellee's religious beliefs are derived from a literal reading of the Bible. Of particular significance in the present case is the Second Commandment which states:

"Thou shalt not make unto thee any graven image, or any likeness of any thing that is in heaven above, or that is in the earth beneath, or that is in the waters beneath the earth."

*Deuteronomy* 5:8. The appellees believe that this passage prohibits them from owning, posing for or otherwise participating in any form of photography, painting or sculpture. The statute's photograph requirement, it is argued, forces the appellees to choose between surrendering their driving privileges and violating a fundamental religious precept.

The Bureau of Motor Vehicles did not strongly contest the sincerity of the appellees' religious convictions. Rather, the Bureau argued that the authority conferred upon it by the statute in question is superior to the appellees' religious beliefs. The Bureau further asserted that driving an automobile in this state is a privilege subject to regulation under the police power of the state and that the photograph require-

ment "for the purpose of identification" is a reasonable regulation which supersedes the appellees' religious freedoms.

Following a hearing on the appellees' motion for permanent injunction, the trial court concluded that the Bureau had not shown that it had a compelling interest in the photo requirement which would outweigh the appellees' sincere and basic religious beliefs. Accordingly, the court held that the statute was unconstitutional as applied to the appellees and enjoined the Bureau from requiring properly certified members of the Amish and Pentecostal sects to have pictures on their licenses. From this ruling, the Bureau filed its Motion to Correct Errors which motion was denied by the trial court. The Bureau's appeal from this ruling presents the following issues for our review: (1) whether the trial court erred in finding coercive state action, and; (2) whether the trial court erred in not finding a compelling state interest in the subject legislation.

The power of the state to impose reasonable regulations concerning the licensure of drivers within its borders is beyond question. *State ex rel. Root* v. *Circuit Court of Allen County*, (1972) 259 Ind. 500, 505, 289 N.E.2d 503, 506. Also indisputable is the right of an individual or group to freely exercise their religious beliefs. This basic notion was considered to be of such importance that it was included in both the Indiana and United States Constitutions:

"All men shall be secured in their natural right to worship Almighty God, according to the dictates of their own consciences."

Ind. Const. art. I, § 2.

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ."

U.S. Const. amend. I (made applicable to the states through the Fourteenth Amendment in *Cantwell* v. *Connecticut*, (1940) 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213).

The United States Supreme Court has stated that when the right to free exercise of religion comes in conflict with state or federal legislation, such right may be overbalanced only by those governmental interests "of the highest order and those not otherwise served." *Wisconsin* v. *Yoder*, (1972) 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15, 25. *Yoder* involved a challenge by the Old Order Amish, under the Free Exercise Clause, to the requirement in Wisconsin's compulsory education law that all children attend school until age sixteen. The religious beliefs of the Amish required them to terminate formal education after the eighth grade, at which time Amish children began receiving informal instruction aimed at preparing them for the way of life in the Amish community. After finding that the Amish practice had its basis in religion and that such practice was inhibited by the challenged statute, the Supreme Court held that the state's admittedly strong interest in compulsory education was not sufficiently advanced by its application to the Amish to justify the resulting conflict with their free exercise right.

In *Sherbert* v. *Verner*, (1963) 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965, the Supreme Court invalidated the eligibility provision of South Carolina's unemployment compensation statute which operated to deny benefits to claimants who refused to take available jobs requiring Saturday work. Sherbert, a member of the Seventh Day Adventist Church, was denied benefits when she refused to work Saturday, the Sabbath Day of her faith. The Supreme Court found that to condition the availability of benefits upon Sherbert's willingness to violate a cardinal tenet of her religion, effectively penalized the free exercise of her constitutional liberties. In considering whether such a penalty could be justified by a compelling state interest, the Court stated:

"It is basic that no showing merely of a rational relationship to some colorable state interest will suffice; in this highly sensitive constitutional area, 'only the gravest abuses,

endangering paramount interests, give occasion for permissible limitation.' *Thomas* v. *Collins,* 323 U.S. 516, 530, 65 S.Ct. 315, 323, 89 L.Ed. 430."

*Sherbert, supra,* at 374 U.S. 406, 83 S.Ct. 1795, 10 L.Ed.2d 972. It is enlightening to note the Supreme Court's conclusion that in cases where free exercise claims have been rejected, "The conduct or actions so regulated have invariably posed some substantial threat to public safety, peace or order." *Yoder, supra,* at 406 U.S. 230, 92 S.Ct. 1540, 32 L.Ed.2d 33; *Sherbert, supra,* at 374 U.S. 403, 83 S.Ct. 1793, 10 L.Ed.2d 970. We think it is reasonable to attribute this conclusion to the fact that the government will ordinarily have a more compelling interest in legislation designed to promote public safety, peace and order. Thus, where considerations of public welfare are involved, there is a greater probability that the balancing of interests will tip in the state's favor.

In sum, for the appellees in the present case to prevail in their First Amendment attack upon the photograph requirement, they must show that their objection to the requirement is rooted in religious beliefs, the free exercise of which is impinged by enforcement of the challenged statute. After such showing, it is incumbent upon the state to come forward and show either that the religious beliefs are not, in fact, violated, or that the state has an interest in the statute which is so compelling that it counterbalances the infringement upon the appellees' rights. This appears to be the test which the trial judge properly employed below.

It is fundamental that in reviewing actions of a trial court, an appellate court can neither weigh the evidence nor determine the credibility of witnesses. *B & T Distributors, Inc.* v. *Riehle,* (1977) 266 Ind. 646, 366 N.E.2d 178, 180. On appeal, this court looks only to the evidence and reasonable inferences therefrom which tend to support the finding of the trial court. *Gariup* v. *Stern,* (1970) 254 Ind. 563, 261 N.E.2d 578. It is only where the evidence leads to but one conclusion and the trial court has reached the opposite

result that the judgment will be disturbed as being contrary to law. *Palmer* v. *Decker*, (1970) 253 Ind. 593, 255 N.E. 2d 797.

A review of the record in this case reveals that there was ample evidence to support the trial court's conclusion that the appellees had carried their burden of proving that their objection to the photograph requirement was derived from a religious belief, and further, that the free exercise of that belief was inhibited by the state's enforcement of the statute in question. The Bureau did not dispute the fact that the appellees' objection to the statute was founded upon a religious principle. It could not reasonably be argued otherwise in light of the fact that the appellee's belief is based on the literal wording of the prohibition against graven images found in the Second Commandment. As to whether this belief was infringed upon by the photograph requirement, the appellees presented much evidence tending to show that many of the Beachy Amish and Pentecostal members depend on motor vehicles for their jobs and to get to and from church. In addition, the leader of the Pentecostals, Reverend Bridwell, testified that it was necessary for him to drive vehicles for the purpose of transporting church members to religious functions and to visit sick and elderly members. Reverend Bridwell further testified that if the photograph requirement was enforced, he would be unable to drive because "if God tells me to go one way and somebody else tells me to go another way, why, I have to obey God." Clearly, the photograph requirement has placed the appellees in a dilemma requiring to choose between violating an important religious principle or surrendering their driving privileges. In the fact of this dilemma, the First Amendment requires the state to give way unless it can demonstrate a compelling interest in the statute which it seeks to enforce.

In its appeal, the Bureau of Motor Vehicles first argues that the trial court erred in finding coercive state action.

The gist of this argument is that there is no "right" to drive in this state, rather, driving is merely a privilege. In other words, the state's position is that no First Amendment problem is raised where a citizens free exercise right is brought into conflict with a mere privilege. This position was considered and expressly rejected by the United States Supreme Court in *Sherbert* v. *Verner, supra,* at 374 U.S. 404, 83 S.Ct. 1794, 10 L.Ed.2d 970:

> "Nor may the South Carolina court's construction of the statute be saved from constitutional infirmity on the ground that unemployment compensation benefits are not appellant's 'right' but merely a 'privilege.' It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege."

Thus, the trial court correctly found coercive state action in that the photograph requirement of the statute would operate to deny these appellees the ability to drive, regardless of whether this ability is characterized as a right or a privilege.

Finally, the Bureau contends that the trial court erred in rejecting its attempt to show a compelling state interest in the photograph requirement. At trial, the Bureau advanced two purposes for the photo requirement which it felt were of sufficient importance to constitute an interest which should outweigh the infringement upon the appellees' rights. These purposes were summarized in appellant's brief as follows:

> "[T]he state has a duty to continually insure the competency of Indiana drivers by testing knowledge of the laws of the road, testing the ability to drive, and constantly checking each driver's knowledge, ability and obeyance. It is only through proper identification that such continual checking can be made by the various law enforcement, judicial, and administrative officers who aid the Bureau of Motor Vehicles in its responsibility."

While we agree that the state has a strong interest in insuring driver competency, the idea that the photograph require-

ment is necessary to that interest is patently absurd. We do not see how having one's photograph on a drivers license can make one a more competent driver. The Bureau's argument that the photograph requirement gives it a means of speedy, positive identification, thus aiding the Bureau in the performance of its duty to insure safe roads in Indiana, is more compelling. Normally we would not question the state's need for administrative efficiency in an area as broad and complex as is involved in the licensing of all Indiana drivers. However, we feel that there are other alternatives available to the Bureau which would satisfy this purpose without impinging on the rights of these appellees. For example, the statistics which are traditionally included on a driver's license, such as license number, height, weight, eye and hair color, have long proven adequate to enable the Bureau to fulfill its important duties. Furthermore, we feel that it is as much to a driver's advantage to have a photo-license as it is to the state. Having a photo-license goes a long way toward easing the problems which arise when cashing checks and transacting other non-cash business. Since a photo-license is arguably an advantage to license-holders, it follows that the exemption sought by the appellees will, to some degree, work a disadvantage upon them. Thus, it is not likely that a ruling in the appellees' favor would result in widespread abuse. In sum, we agree with the trial court's finding that the state's interest in the photograph requirement, such as it is, is not so compelling that it may be allowed to infringe upon the appellees' fundamental right to freely exercise their religious beliefs.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 380 N.E.2d 1225.