John A. ZALUD, Jr. and Elliott H. Singer, Appellants (Defendants Below),

v.

ETHAN ASSOCIATES, Appellee (Plaintiff Below).

No. 3–1180A342.

Court of Appeals of Indiana, Third District.

March 30, 1981.

Charles A. Asher, South Bend, for appellant Elliott H. Singer.

Donald E. Wertheimer, South Bend, for appellant John A. Zalud, Jr.

Robert D. Lee, Patricia O'Brien Cotter, South Bend, for appellee.

STATON, Judge.

Ethan Associates (Associates) filed an action as the lessor for the breach of a leasing agreement against the lessees, John A. Zalud, Jr. and Elliott H. Singer (Zalud).[1] The court granted Associates a summary judgment[2] as to the issue of liability. Later, a trial was held on the issue of damages in which the court found in favor of Associates. A judgment of $68,815.41 plus prejudgment interest was entered for Associates.

On appeal, Zalud raises nine issues for our consideration:

(1) Did the court err in its granting of the summary judgment as to liability?

(2) Did it err in ruling that the lease was enforceable?

(3) Was it error for the court to have concluded that Zalud could not have repudiated the lease at will?

(4) Did the court err in its calculation of damages?

---

1. In its Complaint for Rent Due, Associates alleged that Zalud had breached the leasing agreement by not only failing to pay back rent, but overdue insurance premiums and property taxes as well.

2. Because the summary judgment disposed of less than all the claims, it was interlocutory in nature and not appealable. It became final and, thereby, appealable only when the court entered its judgment as to all issues. *See Krueger v. Bailey* (1980), Ind.App., 406 N.E.2d 665, and the cases cited therein.

(5) Was there error in the inclusion of an "unreduced" realtor's commission in the damage award?

(6) Was prejudgment interest properly awarded?

(7) Did the court err in concluding that Associates' efforts to mitigate damages were reasonable?

(8) Was it error for the court to have refused to award a set-off for the subsequent lease?

(9) Did it err in failing to make specific findings on all issues of fact?

We affirm.

## I.

### Summary Judgment

On appeal, Zalud urges that the granting of the partial summary judgment was improper because there were "several questions of material fact necessary for the resolution of the issues of liability." In essence, the "several questions" set forth by Zalud deal with the materiality of the breach of the lease as related to an anticipatory repudiation argument.

The record indicates that, on June 16, 1976, Associates leased a parcel of land to Zalud for the construction and operation of a fast-food restaurant. Prior to June 16th, Associates had leased an adjoining parcel of land to Clancy Hill, owner and operator of a hardware store. In December of 1977, Zalud became aware that a portion of the land leased to him was also included in Hill's lease. The area affected by this 38-foot "overlap" contained ten of the restaurant's forty-one parking spaces and a small landscaped area. In an attempt to resolve the problem, Associates negotiated with Hill and the legal counsel for Zalud. The negotiations were, unfortunately, unsuccessful. On March 8, 1978, Zalud failed to pay the premium for the property insurance, pursuant to the lease agreement. On April 1, 1978, he ceased paying rent. Zalud continued to occupy the premises until September 2, 1978 when he, without giving notice to Associates, vacated the property.

When reviewing the granting of a summary judgment, we may only look to see whether the court correctly applied the law and whether there is any genuine issue of material fact. Ind. Rules of Procedure, Trial Rule 56(C); *Krueger v. Bailey* (1980), Ind.App., 406 N.E.2d 665. To determine whether there are any material facts in controversy the evidentiary matters before the court are to be construed in a light most favorable to the non-moving party. *Tekulve v. Turner* (1979), Ind.App., 391 N.E.2d 673, and any doubt is to be resolved against the movant. *Kendrick Memorial Hospital, Inc. v. Totten* (1980), Ind.App., 408 N.E.2d 130; *Krueger, supra.*

Contending that Associates had materially breached the lease by failing to demise the "overlap" area, Zalud claims that issues of fact exist in this regard. He also argues that this same failure bars Associates from suing on the lease and allows it only to recover for goods and services rendered. We cannot agree. His attempts to develop a variety of "fact questions" cannot change either the evidence or the findings. In its findings of fact and conclusions of law, the court stated:

"9. That as of the 8th day of March, 1978, defendant was in breach of his lease agreement for non-payment of insurance and was duly notified thereof by plaintiff;

"10. That as of the 1st day of April, 1978, defendants ceased paying rent in further violation of their lease;

"11. That the defendant has failed to render any annual accounting as called for in the lease in further breach of the lease;

"12. That until the first part of April, 1978, defendants were not in any manner interfered with in the peaceable enjoyment of the leased premises and at the time the only interference first occurred when Clancy Hill placed certain items for display on the landscaped portion of the overlap area.

"Based upon the above the Court now finds as ultimate fact that the defendants were never so interfered with in their

usage and possession of the demised premises as to constitute any anticipatory repudiation by plaintiff or give rise to any affirmative defense or give rise to right to cancellation of the lease and that accordingly plaintiff is, as a matter of law, entitled to some rejudgment [*sic*] on the issue of liability of the defendants by virtue of the defendants breached [*sic*] of lease set forth in findings of facts numbered 9, 10 and 11 above. The Court further finds that there remains a justiciable issue as to the proper measure and amount of damages, if any, to which plaintiff is reasonably entitled."

■ In Indiana, a lessee who is evicted from a material part of the leased premises may elect to abandon the whole premises and terminate his obligation to pay rent. *Talbott v. English* (1901), 156 Ind. 299, 305–308, 59 N.E. 857; *Hoagland v. New York, Chicago and St. Louis Railway Co.* (1887), 111 Ind. 443, 446, 156 Ind. 299, 305–308, 59 N.E. 857; *Hoagland v. New York, Chicago and St. Louis Railway Co.* (1887), 111 Ind. 443, 446, 12 N.E. 83. A transitory and fleeting interference by the lessor with the lessee's possession is not, however, such an eviction. *Talbot v. Citizens National Bank of Evansville* (1968 7th Cir.), 389 F.2d 207. To constitute an eviction, the act of the lessor must be an actual eviction or an interference with possession so serious that it deprives the lessee of the beneficial enjoyment of the leased premises, i. e., a constructive eviction. *Talbot, supra; Talbott, supra.*

■ It has been repeatedly stated that in reviewing an appeal from a decision in which a judge has rendered findings of fact and conclusions of law, we will not set aside a judgment unless that judgment is erroneous. Ind. Rules of Procedure, Trial Rule 52; *Lawrence v. Ball State University Bd.* (1980), Ind.App., 400 N.E.2d 179; *Matter of Estate of Apple* (1978), Ind.App., 376 N.E.2d 1172. The purpose of making special findings is to provide the parties and the reviewing courts with the theory upon which the judge decided the case so that the right of review for error might be effectively preserved. *Malbin & Bullock, Inc. v. Hilton* (1979), Ind.App., 387 N.E.2d 1332.

■ The court's conclusion that Associates was entitled to a judgment on the issue of liability was amply supported by its findings # 9, # 10, # 11, and # 12. Such findings were sufficient "to disclose a valid basis" for the judgment. *Malbin, supra*, at 1334. Without a doubt, the leasing agreements of both Hill and Zalud should have been adjusted in view of the overlapping problem. A compromise along these lines was, in fact, attempted by Associates and Hill. Zalud, however, chose to take the position that the "double-leasing" was a material breach, and apparently tried to avoid the obligations of his lease by asserting that he had been constructively evicted. The fact remains that the "double-leasing" had no effect upon the restaurant's operations.[3] Zalud was not harmed; he was never deprived of the "beneficial enjoyment" of the use of the ten parking spaces or the landscaped area.[4]

**3.** It is interesting to note that, during this period, Zalud's restaurant was not only losing money, but encountering management problems as well. Zalud testified that he had to make a decision as to which of his three restaurants to close because of a problem of limited management. He chose to cease operations on the property leased from Associates.

**4.** Zalud testified that for the summer of 1978, "we were considering very seriously" putting up some benches and tables on the landscaped area between the restaurant and the hardware store. He said he was precluded from further consideration of this idea when Hill erected a display shed on a portion of the landscaped "overlap" area. The weakness in such a stance becomes apparent in view of the fact that Zalud had breached the lease by failing to pay the rent *prior* to the placement of the shed on the property-at-issue. Zalud admitted in a Request for Admissions:

"REQUEST NO. 8: At no time prior to the filing of this lawsuit did a duly authorized representative of Hill's True Value Hardware store ever place for display any merchandise or obstructive material on the ten parking spaces located in the 38 foot strip of land in question.

"RESPONSE: Admitted."

He also admitted that he had never been instructed by Hill not to park in the ten parking spaces on the "overlap" area.

A summary judgment is a procedure for applying the law to the facts, when no factual controversy exists. *Krueger, supra,* at 668. This is precisely what the court did. Associates presented evidence which established that Zalud was never deprived of the physical possession or "beneficial enjoyment" of any of the property under his lease. Despite the "overlap," his access to the parking spaces was unencumbered. Zalud's evidence in this regard amounted to a claim that if Hill had chosen to expand, he might have had franchise problems. Such was far too speculative in nature as to be given any weight. We are not persuaded that the summary judgment was erroneous, TR. 52; it will not be set aside.

## II.

### Meeting of the Minds

Zalud next argues that the lease was unenforceable as there was no certainty of terms. He claims that the "described real estate was not made available to Defendants, Defendants as a consequence were placed in breach of their franchise agreement, and certainly were left in the precarious position caused by Plaintiff's own breach." Despite Zalud's contentions to the contrary, we again note that the thirty-eight feet of overlapping property *was always made available* to him. In addition, he was unable to produce any evidence at trial which was not highly speculative as to his potential franchise problems. We might agree that several terms in the lease were technically uncertain. In a practical sense, however, Zalud had full use of the land leased from Associates. His retrospective argument that there was a failure of a meeting of the minds as to the amount of land leased must fail.

## III.

### Repudiation of Lease

Claiming that "there simply was no other adequate remedy," Zalud contends that the court erred in not allowing him to repudiate the lease. He argues that Associates' "breach of the purported leasing

agreement placed Defendants directly in violation of their franchise agreement."

When asked if the double-leasing problem made a difference to him, Zalud explained:

"A  Well, the 38′ overlap included 10 prime parking spaces that were in that particular area. They were prime because they were directly opposite to the entrance to the building. Also the fact that they would not—*if those parking spaces were exempt* from my piece of property, they would not have fulfilled the conditions of the franchise agreement, which essentially stated that it was 40 spaces for an 80 seat building, 40 parking spaces rather, for an 80 seat building." (emphasis added).

Zalud's reliance on the potential problems involved in a speculative franchise agreement is misplaced in view of the fact that he was never deprived of his ten parking spaces. It was his failure to pay the rent, pursuant to the leasing agreement, which resulted in the breach. The court did not err in concluding that the remedy of repudiation was improper.

## IV., V., & VI.

### Damages

Relying upon *Johnson v. Taylor Bldg. Corp.* (1978), 171 Ind.App. 674, 371 N.E.2d 404, Zalud charges that Associates should not have been awarded damages as though it had fully performed the contract. He asserts that the double-leasing resulted in less than a full performance of the contract and, as such, a reduction in damages was indicated. If Zalud had been deprived of the "beneficial enjoyment" of the thirty-eight feet in question or if a resulting franchise problem had actually arisen, we might have agreed with his contention. This, however, was not the case. Zalud had full use of the land. Until his breach on April 1, 1978, he "got what he bargained for;" the unfettered use of the ten parking spaces and the small landscaped area. As a practical matter, the contract had been fully performed by Associates; therefore, the

computation of damages as suggested by Zalud would have been in error.

After Zalud had vacated the premises and an effort had been made to locate new tenants, Associates hired a realtor to aid in the re-letting of the property. While Zalud does not question the propriety of the award of the realtor's commission on appeal he does contend that it was error for the court to have allowed the full fee without a reduction to present-day value for commissions paid in advance. In essence, he asks if this portion of the award was reasonable in the light of the practice of the industry.

The computation of a real estate commission is by no means uniformly derived from a precise formula. It is, instead, very frequently a negotiated matter between the parties. At the two-day trial on the issue of damages, conflicting testimony was presented on this issue. The court, as the finder of fact, heard the evidence and concluded that the award of an "unreduced" fee was reasonable. This Court will not attempt to substitute its judgment as to the weight of the evidence or the credibility of the witnesses for that of the court below. Such is not its function. *Drost v. Professional Building Service Corp.* (1972), 153 Ind.App. 273, 286 N.E.2d 846. After a review of the record, we conclude that the court's finding as to the reasonableness of the realtor's fee was supported by evidence of probative value.

Zalud next argues that the award of prejudgment interest was improper because such was not ascertainable at the time of the breach or at the time of the re-leasing. He claims that "The amount of damages, if any, that Plaintiff was entitled to could not, under the appropriate substantive law, be known until the court made the evaluation of Plaintiff's partial performance" on the lease. We disagree.

The court awarded prejudgment interest on the amount of money due Associates beginning October 15, 1979—the date upon which Associates' lease with its new tenants, SCOI, became effective. In its findings of fact and conclusions of law, the court stated:

"14. Plaintiff is entitled to prejudgment interest but only from the 15th day of October, 1979, for prior to that time the damages, if any, due to plaintiff were not liquidated or readily susceptible of being liquidated but were continuing an [*sic*] ongoing damages so long as the property remained unleased and plaintiff was making reasonable efforts to lease the premises."

As noted early on, Associates' alleged "partial performance" of the lease did not render the damages uncertain because Zalud received the full benefit of the contract; it was never "unperformed." The awarding of prejudgment interest is a matter within the discretion of the court. *City of Anderson v. Salling Concrete Corp.* (1980), Ind.App., 411 N.E.2d 728 (transfer pending). The crucial factor in the determination of whether to allow interest before judgment is whether the damages are complete and ascertainable as of a certain time in accordance with accepted standards of evaluation and fixed rules of evidence. *Reith-Riley Const. & Auto-Owners Mut. Ins.* (1980), Ind. App., 408 N.E.2d 640, 647; *City of Anderson, supra.* It was on October 15, 1979 that Zalud's responsibilities on the lease were terminated, *see Grueninger Travel, Etc. v. Lake Cty. Trust* (1980), Ind.App., 413 N.E.2d 1034, and that the damages resulting from his breach became "complete and ascertainable." We conclude, therefore, that the court did not err in its award of prejudgment interest.

## VII.

### Mitigation of Damages

Zalud claims that the "undisputed evidence in this case was that Plaintiff did absolutely nothing to secure a new lessee for the subject premises "between April of 1978 and May of 1979 and, as a result, the damages which accrued during this period were wholly attributable to Associates' inaction. The evidence indicates otherwise.

A review of the record reveals that Zalud did not vacate the leased premises until

September 1, 1978, some five months after he had stopped paying rent. Prior to September 1, 1978, a partner in Associates had spoken with several persons about the possibility of leasing the restaurant. After negotiations with one potential lessee had dissolved in July of 1978, this partner unsuccessfully investigated several other leads. Finally, in May of 1979, the property was listed with a realtor. It was rented within three months. In its finding of fact and conclusion of law, the court stated:

"15. Plaintiff's actions in releasing and re-letting the property were reasonably done in a commercially reasonable manner and plaintiff exercised due diligence in an attempt to mitigate damages."

Zalud asks that a review be made of the court's finding that Associates' actions in the mitigation of damages were accomplished in a reasonable manner. The question of whether Associates used such diligence as would have been exercised by a reasonably prudent person under similar circumstances to re-let the premises after Zalud had defaulted and moved from the premises is one for the trier of fact. *Hirsch v. Merchants National Bank & T. Co. of Ind.* (1975), 166 Ind.App. 497, 336 N.E.2d 833, 836. We must accept the findings made by a trial court if they are supported by evidence of probative value, *Miller v. Ortman* (1956), 235 Ind. 641, 136 N.E.2d 17. Furthermore, such findings, on appeal, will not only be construed together, but they will be construed liberally in support of the judgment. *In Re Marriage of Miles* (1977), Ind.App., 362 N.E.2d 171. We conclude that the court's finding as to the mitigation of damages was supported by evidence of probative value. As such, there was no error.

### VIII.
### Set-off Award

■ Claiming that the SCOI lease resulted "in a windfall" to Associates, Zalud argues that the court erred in failing to award a set-off for the new lease. In its findings of fact, the court stated:

"17. Plaintiff has failed to sustain its burden of proof of establishing that the lease entered into October 15, 1979, is less beneficial to plaintiff than the lease with defendants and therefore the Court denies plaintiff's claim for continuing damages.

"18. Defendants have failed to establish that the lease entered into by plaintiff October 15, 1979, is more advantageous than the lease of plaintiff with the defendants so as to be entitled to any rebate and the Court further finds that the doctrin [*sic*] of rebate is not accepted in the State of Indiana within the issues framed by the present litigation."

Without citing any authority for his proposition, Zalud claims that he is entitled "to claim as set-offs any betterment that the reasonable mitigation efforts yield." A set-off is a counter-demand growing out of a transaction independent of the matter upon which plaintiff's complaint is based and "arising out of debt, duty, or contract, liquidated or not, held by the defendant at the time the suit was commenced. . . ." *Duffy v. England* (1911), 176 Ind. 575, 581, 96 N.E. 704, 707. We are persuaded that to allow a set-off herein would be error as Zalud had no counter-demand, dependent or independent of the matter upon which Associates' complaint was based.

### IX.
### Special Findings

■ Finally, Zalud argues that the trial court erred in failing to make specific findings of fact. We disagree. A court need not recite the evidence in detail as long as the ultimate facts found are stated in the findings. *Salk v. Weinraub* (1979), Ind., 390 N.E.2d 995, 997. After reviewing the twelve findings of fact and conclusions of law made by the court on the issue of liability and the eighteen findings directed to the issue of damages, we conclude that the findings are adequate and supportive of the judgment.

Judgment affirmed.

HOFFMAN, P. J., and GARRARD, J., concur.