John LYSTARCZYK, Erma Lystarczyk, Appellants-Defendants,

v.

Vernon C. SMITS, d/b/a Able Realty, Plaintiff-Appellee.

No. 3-781A186.

Court of Appeals of Indiana, Third District.

May 26, 1982.

W. Russell Sanford, Plodowski & Sanford, South Bend, for appellants-defendants.

Charles A. Asher, South Bend, for plaintiff-appellee.

STATON, Judge.

Vernon C. Smits doing business as Able Realty and John and Erma Lystarczyk [1] had entered into a contract whereby Smits was to build Lystarczyk a house as close as possible to a model home Smits had built and Lystarczyk was to pay Smits $34,600. From a jury trial, Lystarczyk appeals the award to Smits of compensatory damages, punitive damages, and attorney fees for Lystarczyk's breach of the contract. Lystarczyk raises the following issues for our consideration: [2]

(1) Are the compensatory damages excessive and contrary to law?

(2) Was it proper to award prejudgment interest and was the prejudgment interest properly calculated?

---

1. Hereinafter the parties will be referred to as Smits and Lystarczyk.

2. The issues stated in Lystarczyk's brief have been consolidated and reworded.

(3) Is the award of punitive damages and attorney fees supported by sufficient evidence?

(4) Did the trial court err by refusing to give a tendered instruction?

Smits raises the issue of whether he should be awarded by this Court ten percent damages because Lystarczyk brought this appeal.[3]

We affirm in part, reverse and remand in part, and deny the assessment of appeal damages.

## I.

### Compensatory Damages

In his complaint and at trial, Smits alleged that (1) Lystarczyk had paid only $24,000.00 of the $34,600.00 contracted price for the construction of the house, (2) Lystarczyk delayed construction and added to the expense of construction of the house by harassing workers and limiting their access to the construction site, (3) Lystarczyk had not paid for "extras" added to the house that Lystarczyk had requested in addition to what was in the contract, and (4) Lystarczyk had done these things in a malicious, fraudulent, willful and wanton, reckless, oppressive, and outrageous manner in wholesale disregard of the dire consequences to Smits. The jury awarded $13,450.00 compensatory damages, $3,000.00 attorney fees, and $1,000.00 punitive damages.

On appeal, Lystarczyk argues that the compensatory damages are excessive and contrary to law because they are not supported by sufficient evidence of probative value. Lystarczyk recognizes the standard set forth in *Palmer v. Decker* (1970), 253 Ind. 593, 255 N.E.2d 797, 798: in reviewing the evidence on appeal we look to the evidence most favorable to Smits to determine if there is substantial evidence of probative value or reasonable inferences therefrom to sustain the judgment of the trial court. We will reverse the judgment only if the evidence and reasonable inferences are undisputed and could only lead to a verdict contrary to that reached by the jury.

■ Lystarczyk argues that Smits admitted that several items of the house were in need of correction and that it would have cost $500.00 to $700.00 to make the corrections before Lystarczyk moved into the house. Lystarczyk argues that at least $500.00 should have been set off against the amount of compensatory damages awarded. We disagree.

The testimony to which Lystarczyk refers is as follows:

"Q. Now I know there is a dispute here as to who caused certain things not to be finished, but putting that aside let me ask you to give your best estimate of what today it would cost for you to take a crew or anyone to go back and pick a crew and go back and finish or fix these items, any drywall cracks in that house, any trim replacement, any efflorescence, any problems with any doors, interior or exterior, any caulking in any bathrooms and any metal staging? [*sic*]

"A. Well, I think really you should divide this up. Any problem with the drywalling would be the drywaller's responsibility. I shouldn't have to pay for that.

"Q. I understand, but if you had to go back today *and it wasn't the subcontractor's responsibility* what would it cost today to fix that?

"A. I would say between eight and thirteen, fourteen-hundred-dollars.

"Q. Now, what would it cost you to fix those items had they been brought to your attention before Mr. and Mrs. Lystarczyk moved in?

---

**3.** Smits argues that Lystarczyk waived all issues regarding the sufficiency of the evidence presented at trial because Lystarczyk did not renew his motion for a judgment on the evidence at the close of all evidence (Lystarczyk had moved for a judgment on the evidence at the close of Smits' case-in-chief). Smits cites as authority Ind. Rules of Procedure, Trial Rule 50(A). TR. 50(A) does not support Smits' argument. This has been noted in 4 Thompson and Hostetler, *Indiana Forms of Practice and Pleading*, p. 50–10 (1981).

"A.   Probably about five.

"Q.   About five-dollars? [*sic*]

"A.   Five to seven-hundred.

"Q.   *These subcontractors would have been obligated to come back and fix these items?*

"A.   *Yes.*

"Q.   And you stood ready to call them back?

"A.   That's right." (Emphasis added.)

This testimony could reasonably be interpreted to state that if Smits did all the repairs before Lystarczyk moved into the house, including work that the subcontractors really should do, it would have cost $500 to $800.00. Smits did not testify to a specific amount that it would cost him to make repairs in addition to the work the subcontractors were obligated to perform. We can not agree with Lystarczyk that the evidence before the trial court proves that Smits was put in a better position than he would have been by $500.00.

Lystarczyk also argues that $50.00 should have been set off against the damages awarded because Smits admitted in his opening statement that Lystarczyk had legitimately expended this amount to repair his garage door. Smits' attorney stated the following in opening argument:

"Now, the Lystarczyks have claimed that these defects have made the home— have reduced the market value of the home and that they are going to cost an extreme amount of money to remedy. However, it should be noted in the record, and the evidence will show, that to date they in fact have paid—have spent two-hundred-and-fifty-dollars to remedy these extremely terrible defects. Two-hundred of that amount was unnecessary. So, in short, they have spent fifty-dollars on the total of all these defects."

Indiana has not previously stated if and when an attorney's remarks during opening statement are binding upon the client as an admission of fact which relieves the opposing party of the duty to present evidence of that fact. After considering the reasoning of other jurisdictions, we conclude that an attorney can make an admission during opening statement that is binding upon his client and relieves the opposing party of the duty to present evidence on that issue. *McLhinney v. Landsdell Corp. of Maryland* (1969), 254 Md. 7, 254 A.2d 177, 180; *Erwin v. Thomas* (1973), 267 Or. 311, 516 P.2d 1279, 1280; *DeArmon v. City of St. Louis* (1975), Mo.App., 525 S.W.2d 795, 799; *Fireman's Fund American Insurance Companies v. Central Securities, Inc.* (1971), 208 Kan. 263, 491 P.2d 914, 916; *Phillis Development Co. v. Commercial Standard Insurance Co.* (1969), Okl., 457 P.2d 558, 560; *Miller v. Johnston* (1969), 270 Cal.App.2d 289, 75 Cal.Rptr. 699, 705; *see Samuels v. Spangler* (1969), Ky., 441 S.W.2d 129, 131; *see LaRocco v. Fernandez* (1954), 130 Colo. 523, 277 P.2d 232, 234; *see Trollope v. Koerner* (1970), 106 Ariz. 10, 470 P.2d 91, 95.

Usually, an opening statement is used to acquaint the judge and jury with the facts that counsel intends to prove; it is not substantive evidence. *McLhinney, supra.* If an attorney makes a clear and unequivocal admission of fact, he or she has made a judicial admission [4] which is binding upon his or her client.[5] *DeArmon, supra.* A mere outline of anticipated proof upon any of the issues of the case is not to be regarded as a binding admission, *Id.* Where there is ambiguity or doubt in a statement, it is presumed that the attorney did not intend to make an admission. *Fireman's Fund American Insurance Companies, supra.*

Smits' attorney did not make a clear and unequivocal admission that fifty dollars

---

**4.** A judicial admission is a formal stipulation that concedes any element of a claim or defense; therefore, it determines the issue conclusively and dispenses entirely the need for further evidence on that issue. An evidential admission is a statement or conduct of a party introduced as evidence by the opposing party. 64 Columbia L.Rev. 1121.

**5.** In the absence of a showing of fraud by his attorney, a client is bound by the actions of his attorney. *State v. Dubois Circuit Court* (1968), 250 Ind. 38, 233 N.E.2d 177, 178.

was spent to correct defects of the house. The attorney's mere outline of anticipated proof upon this issue cannot be regarded as a binding admission.

■ Lystarczyk argues that Smits used a lesser quality joist in the construction of the house than was required by the contract. He argues that $2,500.00 should be set off against the compensatory damages awarded. Lystarczyk recounts the evidence most favorable to his position and attempts to discredit the evidence most favorable to the judgment by arguing that Smits' testimony is based upon conjecture; therefore, it is incompetent. Suffice it to say that when all of Smits' testimony is considered, it is obvious that his testimony is based upon personal knowledge. The testimony of Smits and Graves[6] conflicted. The jury resolved this conflict in Smits' favor. Therefore, as Lystarczyk noted, we view the evidence in the light most favorable to Smits. Lystarczyk was not entitled to a $2,500.00 set-off.

## II.

### Prejudgment Interest

■ Lystarczyk argues that prejudgment interest should not have been granted. Prejudgment interest is proper when the damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time the damages accrued. *Indiana Industries, Inc. v. Wedge Products* (1982), Ind.App., 430 N.E.2d 419; *Fort Wayne National Bank v. Scher* (1981), Ind.App., 419 N.E.2d 1308, 1310; *Zalud v. Ethan Associates* (1981), Ind. App., 418 N.E.2d 309, 314. As we recently noted in *Indiana Industries, Inc., supra,* the "ascertainable" standard is in reference to the amount of damages as distinguished from the liability for those damages. The trier of fact must always exercise its judgment to determine the liability for damages; however, prejudgment interest is

proper where the trier of fact need not exercise its judgment to assess the amount of damages.

■ Contrary to Lystarczyk's assertions, the trier of fact did not have to exercise its judgment to assess the amount of damages once it had determined the liability for damages. Both the amount owed on the contract and the cost of extras was specifically set forth. The award of damages was therefore a mere mathematical computation once liability had been determined. It was proper to award prejudgment interest.[7]

Lystarczyk also argues that the jury awarded Smits excess prejudgment interest. He argues that interpreting the evidence in the light most favorable to Smits the debt was due and owing from October 15, 1977 through October 25, 1979 (the date of judgment). We agree due to the following computations:

| | | |
|---|---|---|
| $ 9,600.00 | Owed on contract | |
| + 1,583.83 | Extras added to the house | |
| $ 11,183.83 | TOTAL owed to Smits for construction | |
| 8% per annum for 2 years on $11,183.83 = $1,860.99 | | |
| $ 11,183.83 | Total for construction | |
| + 1,860.99 | 2 years interest | |
| $ 13,044.82 | Damages at end of 2 years | |
| 8% per annum for 10 days on $13,044.82 = $ | | 28.59 |
| $ 13,044.82 | Damages at end of 2 years | |
| + 28.59 | Interest for 10 days | |
| $ 13,073.41 | TOTAL DAMAGES | |
| $ 13,450.00 | Damages awarded | |
| −13,073.41 | Actual damages | |
| $ 376.59 | Excess damages | |

The award of damages should be decreased by $376.59.

## III.

### Sufficient Evidence

#### A. Punitive Damages

Lystarczyk argues that there is insufficient evidence to support the award of puni-

---

6. Graves was Lystarczyk's expert witness.

7. Lystarczyk also argues that if we found that Lystarczyk was entitled to a set-off of at least $1,000.00, then he had tendered full payment in December of 1977 and such tender should have

stopped the running of interest. We did not find Lystarczyk entitled to a $1,000.00 set-off; therefore, his tender did not stop the running of interest.

tive damages because there is no evidence of oppression, fraud or bad faith such that one could find that fraud, malice, gross negligence, or oppression mingle in the controversy.

Lystarczyk is really arguing for this Court to weigh the evidence in a light favorable to him. This we cannot do as we neither weigh the evidence nor determine the credibility of witnesses. *B & T Distributors, Inc. v. Riehle* (1977), 266 Ind. 646, 366 N.E.2d 178, 180. We view the evidence and the reasonable inferences therefrom in the light most favorable to Smits.

The evidence most favorable to the judgment is as follows: Smits and Lystarczyk signed a contract which required Smits to build Lystarczyk a house as close as possible to the model home Smits had built. During construction of the house, Lystarczyk told Smits that he did not have the money to pay the installment due for the construction of the house. Lystarczyk told Smits that Smits would not be paid until Lystarczyk's present home was sold.[8] Later, Smits stopped construction of the new house temporarily until he received assurance that he would be paid. After construction of the new house resumed but before it was completed, Lystarczyk moved into the newly constructed house without Smits' knowledge. Lystarczyk then frustrated Smits' efforts to complete the house by denying him access to the house.

During Lystarczyk's occupancy of the newly constructed house, Smits pleaded with Lystarczyk to pay him so that he could pay bills incurred in building the house. Smits explained to Lystarczyk how he needed the money to keep his small construction business going. Two months passed without payment or any complaint about structural defects. Then,[9] Lystarczyk told Smits he would not pay him the rest of the money owed for the construction of the house because he felt Smits was not entitled to the full contract price due to the defects in the house. Later, Lystarczyk offered to pay all but $1,000.00 of the contract price.

The jury could reasonably infer from the above evidence that Lystarczyk was trying to delay payment to Smits during the construction of the house. They could have concluded that Lystarczyk prevented completion of the house and frustrated attempts of sub-contractors to gain entrance so that they could correct defects. The jury could further conclude that Lystarczyk then used the situation he had created as a reason to withhold payments from Smits. Later, Lystarczyk offered to settle the dispute for $1,000 less than the contracted price. The jury could also conclude that certain inconsistencies in Lystarczyk's depositions and trial testimony demonstrated that he had attempted to avoid payment through perjury. The jury could therefore conclude that there was evidence of oppression, fraud, or bad faith.

### B. Attorney Fees

Generally, each party to the litigation must pay his own counsel fees. Exceptions, which have been created by use of the equitable powers of the court, do exist. *Umbreit v. Chester B. Stem, Inc.* (1978), Ind.App., 373 N.E.2d 1116, 1119. Smits was awarded his attorney fees under what is known as the "obdurate behavior" exception; the court uses its equitable power to impose costs on a defendant who has behaved in bad faith. *Id.*

Lystarczyk recognizes that when punitive damages are awarded it may be proper to award attorney fees; however, he argues that Smits only testified that he had expended $2,005.00 for attorney fees by the date of trial. He argues that this evidence is insufficient to support the $3,000.00 award. We agree.

In *U.S. Aircraft Financing, Inc. v. Jankovich* (1980), Ind.App., 407 N.E.2d 287 at 295, Judge Chipman, writing for this court wrote:

---

8. Lystarczyk's present home was not mortgaged.

9. This was four months after Smits first pleaded for payment and explained how he needed payment to keep his business going.

"When counsel does not present evidence as to the hours expended in behalf of his or her client and perhaps out-of-pocket expenses, the risk is then taken that a subsequent award of attorney's fees may be considered, on appeal, as excessive since the record may not indicate any justification for the amount awarded. . . . "

He noted that in cases tried without a jury there had been instances where a judge had taken judicial notice of the reasonableness of an attorney fee.[10] The judge could take judicial notice of what a reasonable attorney fee would be because he or she was familiar with the action and the amount of work that was required. *Geberin v. Gerberin* (1977), 172 Ind.App. 255, 360 N.E.2d 41, 47. The jury, not being confronted with such matters on a daily basis, can not make the same judgment.

■ The legal profession stands on the same plane with other professions in litigation involving professional fees. Proof is required of the nature of the services rendered and the reasonableness of the charge made.[11] *Deatherage v. Walker* (1980), Ala.Civ.App., 387 So.2d 845, 847; *Lyle v. Lyle* (1964), Fla.App., 167 So.2d 256, 257; *State, By and Through State Highway Commission v. Marsh* (1978), 175 Mont. 460, 575 P.2d 38, 43; *Trudel v. Trudel* (1980), 45 Or.App. 663, 608 P.2d 1230, 1233; *Williamsburg Nursing Home, Inc. v. Paramedics, Inc.*, (1970), Tex.Civ.App., 460 S.W.2d 168, 170; *Gifford v. Casper Neon Sign Co., Inc.* (1980), Wyo., 618 P.2d 547, 553. An example of the various factors which may be considered when objectively determining a reasonable award of attorney fees include the following:

(1) The time, labor, and skill required to perform the legal service properly,

(2) The difficulty of the issues involved,

(3) The fee customarily charged in the locality for similar legal services,

(4) The amount involved, and

(5) The time limitations imposed by the circumstances.

*See, Fox v. Galvin* (1978), Ind.App., 381 N.E.2d 103, 108. Smits did not present any evidence concerning these factors. The award of $3,000.00 attorney's fee is not supported by sufficient evidence.

## IV.

### Instruction

The trial court refused Lystarczyk's tendered instruction no. 6. Lystarczyk argues that this was reversible error. We disagree.

■ When we consider whether any error results from the refusal of a tendered instruction, we must determine whether (1) the tendered instruction correctly states the law, (2) there is evidence in the record to support the giving of the instruction, (3) the substance of the instruction is covered in another instruction accepted by the court. *Dahlberg v. Ogle* (1978), 268 Ind. 30, 373 N.E.2d 159, 164–165. The instruction refused by the trial court is as follows:

"There was in force an ordinance within the County of St. Joseph, State of Indiana, which provided in part:

'It shall be unlawful for any person or persons not holding valid annual licenses as herein required, to wire any public or private building, within the limits of the unincorporated areas of St. Joseph County, Indiana, except by the individual who owns the property, for lighting or heating by electricity or for use of electrical power, or to repair or change any electrical wire or wires, to sell or expose for sale electrical appliances, devices, apparatus, designed to be part of or attached to electrical lighting, heating or power currents, in any place or private building in said county . . . '

---

10. Usually the trial court may not take judicial notice of the reasonableness of the attorney fee without disclosure at trial and an opportunity to object. *In Re Marriage of Gray* (1981), Ind.

App., 422 N.E.2d 696, 703; *Belcher v. Buesking* (1978), Ind.App., 371 N.E.2d 417, 420.

11. A lesser standard would undermine the confidence of the public in the bench and the bar.

"Ordinance No. 3, 1945.

"If you find from a preponderance of the evidence that the plaintiff violated this ordinance in the construction of defendant's home, then plaintiff should not recover any sum for that portion of the contract concerned with electrical work or the cost of performing the electrical work."

The evidence was as follows: Smits contracted Dick Kennedy, a licensed electrician, to do the electrical work on the house. Smits' men drilled all the holes in the support beams through which the wiring ran and they ran the wire. Kennedy wired the circuit breaker box and every internal box in the house. Smits stated that he did not observe his men do any of the wiring.

█ There is no evidence to support the giving of the instruction. The ordinance states that it is unlawful for an unlicensed person to wire a building. The evidence in the record reveals that only a licensed person wired the house. The trial court did not err when it refused the tendered instruction.

## V.

### Damages

█ Smits argues that damages should be assessed under AP. 15(G) against Lystarczyk. AP. 15(G) states:

"Damages Against Appellant. If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten per cent (10%) upon the judgment, in money judgments, and in other cases in the discretion of the court; and the court shall remand such cause for execution."

As we have not affirmed the judgment completely, damages are inappropriate.

Affirmed in part, reversed and remanded in part, appeal damages denied.

GARRARD, J., concurs.

HOFFMAN, P. J., concurs in result with opinion.

HOFFMAN, Presiding Judge, concurring in result.

I concur in the result reached by the majority. I am compelled however to address the issue of attorney fees.

Generally, a trial court may take judicial notice of what a reasonable attorney fee should be.

*In re Lockyear* (1974), 261 Ind. 448, 305 N.E.2d 440;

*McDaniel v. McDaniel* (1964), 245 Ind. 551, 201 N.E.2d 215;

*In re Marriage of Gray* (1981), Ind.App., 422 N.E.2d 696;

*First Valley Bank v. First S & L Ass'n.* (1980), Ind.App., 412 N.E.2d 1237.

This is true because the trial judge is an expert in his own right and may base the award on his knowledge and experience in the legal profession. *See generally Fox v. Galvin* (1978), Ind.App., 381 N.E.2d 103. In making such a determination, the trial judge is acting as the fact-finder in a case tried without a jury.

The present case however, presents a different situation. This case was tried before a jury. The jury therefore acted as the finder of fact. Generally, jurors do not have the expertise necessary to make a determination regarding a reasonable attorney fee. In such cases there must be sufficient evidence in the record to support the jury's determination. The record in the present case does not contain sufficient evidence to support the jury's award of attorney fees.