IN THE MATTER OF THOMAS LOCKYEAR.

[No. 772S97. Filed January 8, 1974.]

*Thomas Lockyear,* of Evansville, *Gaylon Clark,* of Evansville, for respondent.

*John B. Ramming,* of Indianapolis, *K. Richard Hawley,* of Mt. Vernon, for Indiana Supreme Court Disciplinary Commission.

ARTERBURN, C.J.—This proceeding was instituted by a "Verified Complaint For Public Reprimand" filed July 18, 1972. The Honorable Paul R. Schnaitter was appointed Hearing Officer and heard the issues involved. On November 6, 1973, he filed his Findings of Fact and Recommendations stating that the Disciplinary Commission failed to prove its allegation that the fee charged by the Respondent was excessive; therefore, the Respondent was not guilty of misconduct. These Findings of Fact and Recommendations are as follows:

## FINDINGS OF FACT AND RECOMMENDATIONS OF HEARING OFFICER

The undersigned, heretofore appointed by this Honorable Court as Hearing Officer and Judge in the above entitled and numbered cause under the provisions of Admission and Discipline Rule 23 of this Court, respectfully reports to this court as follows:

### Preliminary Proceedings and Hearing

The Disciplinary Commission of this Court filed a Verified Complaint for Public Reprimand against the Respondent in this Court on July 18, 1972. On the same day, notice was issued by the Clerk of this Court to the Sheriff of Vanderburgh County, Indiana, for service on the Respondent. This

notice was served on the Respondent July 20, 1972 and an appropriate return made on that date.

At the time the Complaint was filed, the Disciplinary Commission also filed a Petition for Appointment of Assistant Counsel. Pursuant thereto Hon. K. Richard Hawley, an attorney of Mt. Vernon, Indiana, was approved as Assistant Counsel by this Court August 21, 1972.

Thereafter Hon. Warren W. Martin, Jr., Judge of the Clark Superior Court of Clark County, Indiana, was appointed by the Court as Hearing Officer and Judge in the cause. His death April 20, 1973 left the appointment vacant.

The undersigned was appointed by order of this Court dated June 7, 1973, as corrected June 12, 1973. An oath was taken on that date and transmitted to the Court. After telephone communication with the attorneys for the Disciplinary Commission and the Respondent, the Hearing Officer and Judge issued a Notice of Hearing setting the matter for hearing at 9:00 o'clock A.M. July 17, 1973 in the Court Room of the Vanderburgh Circuit Court in the Vanderburgh County Court House at Evansville, Indiana. A copy of the notice is attached as an exhibit to this report and marked "Exhibit 1".

The hearing convened at the time and place fixed in the notice. The Disciplinary Commission appeared by John B. Ramming, Executive Secretary, and K. Richard Hawley, Assistant Counsel, and the Respondent appeared in person and by his attorney, Gaylon Clark, of the Evansville Bar.

After being convened the hearing was moved, as permitted by the terms of the notice, to the Court Room of Hon. Paul Luster, J.P., directly across the hall from the Circuit Court Room.

At the hearing it was agreed that the Disciplinary Commission would be given an opportunity after the hearing to file a brief with the Hearing Officer, the Respondent might then file an answer brief and the Disciplinary Commission then have the opportunity to reply to the answer brief. The cause

was to be considered submitted after all briefs were filed. The Hearing Officer received the final brief October 9, 1973.

Attached hereto are also the following Exhibits:

Exhibit 2—Verified Complaint for Public Reprimand in Cause No. 772-S-97

Exhibit 3—Notice of Filing of Verified Complaint and Sheriff's return.

Exhibit 4—Petition for Appointment of Assistant Counsel

Exhibit 5—Order Approving Appointment of Assistant Counsel

Exhibit 6—Order Appointing Hearing Officer

Exhibit 7—Corrected Order Appointing Hearing Officer

Exhibit 8—Oath of Hearing Officer

At the hearing July 17, 1973 evidence was heard from the following witnesses: Bette Jane White, Joe S. Hatfield, Robert H. Hayes, James M. Buthod, Herman L. McCray, James D. Lopp, Hon. Martin W. Newman, Hon. William H. Miller, William D. Stephens, Thomas Lockyear and Robert D. Norton, and there were received in evidence the depositions of Jack Norman VanStone, Gene E. Brooks and Robert H. Hahn. The Hearing Officer also considered the following documents admitted into evidence:

Certified copy of Order for Admission on Examination

Certified copy of Oath of Thomas Lockyear

Entry Gibson Circuit Court, Cause No. C-70-341, May 11, 1971 (Exhibit A)

Entry Gibson Circuit Court, Cause No. C-70-341, June 2, 1971 (Exhibit B)

Entry Gibson Circuit Court, Cause No. C-70-341, June 2, 1971 (Exhibit C)

Entry Gibson Circuit Court, Cause No. C-70-341, September 14, 1970 (Exhibit D)

Copy of check, White Trucking Company, dated October 22, 1971 (Exhibit E)

Affidavit of Bette Jane White 12/23/73 (Exhibit F)

The parole testimony was taken in shorthand by Mrs. Nadine Lodge, the official Court Reporter for the Fifth Judi-

cial Circuit. This testimony has been transcribed, certified to by the reporter and by the Hearing Officer.

The items of documentary evidence precede the certificates to the transcript, and the three depositions are contained in a separate envelope transmitted herewith. The briefs filed by the parties are also filed herewith.

### Findings of Fact

The Respondent, Thomas Lockyear, was admitted to the practice of law in the State of Indiana December 4, 1957, and has continuously since then maintained an office in the City of Evansville, Indiana.

He is a person of excellent reputation, good standing in the community and, excepting for the situation which is the subject of this proceeding, has never been charged with unethical conduct.

On or about October 21, 1970 Jack White, a resident of the Town of Owensville in Gibson County, Indiana, sued his wife, Bette Jane White, for divorce in the Gibson Circuit Court. Seeking legal counsel she was referred to the Respondent by another attorney and employed Respondent to represent her November 1, 1970.

After considering the situation and relying on Mrs. White's belief that Mr. White would "come to his senses" there was filed for Mrs. White by the Respondent a cross-complaint in the divorce proceeding seeking a limited divorce or separation from bed and board. No order for support or fees pendente lite was asked for or obtained, since the defendant had the power to write checks on a joint bank account for her support. At or near the time of filing the cross-complaint the Respondent charged Mrs. White a fee of $200.00. At the time Respondent was retained, Respondent was advised by Mrs. White that her husband had offered her money and property of a total value of approximately $40,000 in settlement of her property rights and alimony.

The expected change in Mr. White's attitude did not develop.

A change of venue was taken from Hon. Harvey W. Garrett, the Regular Presiding Judge of Gibson Circuit Court, and Hon. Howard King, the then Judge of the 57th Judicial Circuit, was selected and qualified as Special Judge in the case.

On May 17, 1971 the defendant's cross-complaint was dismissed and the divorce case was submitted to the Court on plaintiff's complaint and the defendant's answer in denial. During the trial the plaintiff denied the existence of an agreement by the terms of which Mrs. White was to recover property and alimony of an aggregate of approximately $100,000, which Mrs. White and her attorney, the Respondent, understood as having been agreed upon before the cause was submitted. The Trial Judge thereupon granted the plaintiff (husband) an absolute Divorce from the defendant (wife) and reserved further proceedings in connection with the determination of property rights and alimony. A decree was entered accordingly which also gave the parties ten days within which to enter into a settlement of their property rights. On June 2, 1971, the parties not having agreed, the Special Judge disqualified himself on the ground that he had heard the evidence as to the settlement and the dispute thereon to such an extent as to possibly bias and prejudice him. The parties thereupon agreed that he nominate a panel for the selection of a successor Special Judge to conduct further proceedings in the case. Thereafter Hon. Ernest Tilly, Jr., Judge of the Knox Circuit Court, was selected and the reserved part of the divorce case was submitted to Judge Tilly, sitting as Special Judge in the Gibson Circuit Court. Thereafter on September 14, 1971 Judge Tilly decided the property and alimony matter, awarding Mrs. White as her sole and separate property a joint bank account in the approximate sum of $4,500, certain real estate owned by Jack White in Owensville, Indiana, together with the household furnishings located therein, a promissory note in the amount of $12,500 made by her mother and secured by a mortgage, and alimony in the sum of $100,000 payable $34,000 in cash and $66,000 payable at the rate of $6,000

beginning January 15, 1972 and a like amount each January thereafter to and including January 15, 1982. The Court further ordered that the plaintiff pay attorneys fees in the sum of $4,700 to defendant's attorney, Thomas Lockyear. This award to Mrs. White, ignoring the award for attorneys fees, amounted to approximately $125,000. Judge Tilly's award was made, as far as the evidence before the Hearing Officer shows, without any amendment of the pleadings, without any evidence as to the work done by the defendant's attorney, and without any evidence as to the value of such services in Gibson County or any other county in Indiana. The sole criteria before Judge Tilly as shown by the evidence adduced at the hearing held by the Hearing Officer, were the record in the case and the amount of Mrs. White's award.

Between the time he received the $200 retainer in the latter part of 1970 and the date of the decree, the matter of fees was mentioned between Mrs. White and the Respondent. The evidence before the Hearing Officer as to what was said indicates that Respondent advised Mrs. White that if she felt that he should receive a fee in addition to what the Court allowed, he would charge her an additional fee. The plaintiff in the divorce paid the $4700 award to defendant's attorney, the Respondent, but the date of payment was not shown by the evidence.

Some time the latter part of October Mrs. White advised the Respondent that she had received from Mr. White a check in the amount of $31,622.25 and the Respondent advised Mrs. White that she should bring the check to his office. The check was a check on the account of White Trucking Company, Owensville, Indiana, payable to Bette White for $31,622.25 signed by Jack White. The following notation appears on the check:

$34,000.00
2,377.75
———————
$31,622.25"

Opposite the figure $2,377.75 appears a notation which apparently is "upkeep since May 17".

When Mrs. White brought the check to the Respondent's office, a conference was held during which Respondent informed Mrs. White that in addition to the fee allowed by Judge Tilly he should be paid the sum of $15,000 for his services. At the Respondent's request Mrs. White endorsed the check and it was then endorsed by the Respondent "for deposit only". The Respondent then gave Mrs. White his check for $16,622.25 and the checks were taken to Respondent's bank by Mrs. White and Respondent's secretary. The check for $32,622.25 was deposited in Respondent's bank account and Mrs. White cashed the check for $16,622.25.

Some days later Mrs. White, without any further conference, complaint to or demand on the Respondent, conferred with her husband, who stopped payment on the check. Thereafter Mr. and Mrs. White conferred with Mr. Lockyear and proposed that the matter be settled for $5,000 instead of the $15,000. The Respondent refused this proposal. After the filing of the Verified Complaint for Public Reprimand by the Disciplinary Commission, the Respondent, after consulting with counsel, repaid to Bette J. White the $15,000, and she filed in this cause her Affidavit in which she stated under oath that the dispute involving the attorney's fees in her divorce case had been resolved and that a settlement fair and equitable had been entered into and consummated, and that she had fully and completely released the Respondent from any further responsibility or liability involving said dispute, and requested the Supreme Court of Indiana to dismiss the complaint filed by the Disciplinary Commission.

At the time the divorce case was pending, practically all of the property of the marriage apparently was held by the husband and had a value of approximately $350,000.

The services rendered by the Respondent are described in his testimony (Tr. p. 44, 1. 17 to p. 68, 1. 10), and included consultations with the client, the preparation and filing of

pleadings, discovery proceedings and depositions as to the nature and extent of the plaintiff's (husband's) property, negotiations as to settlement of the defendant's (wife's) alimony and property rights, the trial of the divorce case in the Gibson Circuit Court, subsequent research and consideration of the situation resulting from the decree entered by the original Special Judge in the case, a subsequent trial of the case before the successor Special Judge, and a trip to Vincennes to argue matters before the successor Special Judge.

Mr. and Mrs. White at the time Respondent was retained had been separated for more than a year.

The value of the total property settlement and alimony award to Mrs. White is stated at various amounts by the witnesses before the Hearing Officer. By the terms of the judgment entered, it is as follows:

| | |
|---|---:|
| Initial alimony payment | $ 34,000.00 |
| 11 annual payments of $6,000 each | 66,000.00 |
| House (appraised value) | 7,000.00 |
| Mortgage | 12,500.00 |
| Joint bank account | 4,500.00 |
| Total | $124,000.00 |

However, when the present value of the $66,000 alimony judgment is applied, we find that the present value of the $66,000 alimony judgment at 8% is $42,933.76, and if the present value is calculated at the rate of 6%, the $66,000 alimony judgment has a present value of $47,331.60. It is therefore practical in this matter to state that the alimony judgment is approximately $100,000.00.

The custom in Vanderburgh County, where the Respondent practices law, is that there is no rule against the attorney charging the client a fee over and above a fee allowed by the Court, and this has been the announced policy of the Superior Court of Vanderburgh County. There is no evidence as to what the policy or custom is in the Gibson Circuit Court.

### RECOMMENDATIONS AND FINDING

In this case the Disciplinary Commission of the Supreme Court of Indiana contends that the Respondent charged and collected from one Bette Jane White for representing her in a divorce case an illegal or clearly excessive fee in violation of DR 2-106 (A) and (B) of the Code of Professional Responsibilities for Attorneys at Law, Burns Indiana Statutes Annotated, Court Rules, Book 2, pps. 692-693, which reads:

"DR 2-106. Fees for Legal Services.—(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent."

The total fee charged by the Respondent was $19,900, which was made up as follows:

(a) $200.00 paid by the wife at or near the time the attorney was employed by the wife;

(b) $4,700.00 paid by the husband pursuant to an order entered by a successor Special Judge, in whom retained juris-

diction was vested to hear and determine the property rights of the parties (including alimony) in the original Special Judge's decree granting the husband a divorce.

(c) $15,000.00 paid by the wife out of the husband's initial payment of $32,622.25 on the judgment awarded the wife.

The services rendered by the Respondent are described in his testimony and in the findings of the Hearing Officer hereinabove set forth, and included consultations with the client, the preparation and filing of pleadings, discovery proceedings and depositions as to the nature and extent of the plaintiff's (husband's) property, negotiations as to settlement of the defendant's (wife's) alimony and property rights, the trial of the divorce case in the Gibson Circuit Court, subsequent research and consideration of the situation resulting from the decree entered by the original Special Judge in the case, a subsequent trial of the case before the successor Special Judge of the question of alimony and property division, and a trip to Vincennes to argue matters before a successor Special Judge. The recovery for the client in the case was approximately $100,000.00 on a present value basis. The increase over the offer was approximately $60,000.00 on a present value basis.

There was no evidence introduced at the hearing in this case as to what an appropriate fee would have been in the case, nor was there any testimony that the fee charged was "clearly excessive". By this is meant that no person testified who was qualified as an expert on the matter of attorneys fees customarily charged in the Gibson Circuit Court or in any other court, and no opinions were offered or admitted into evidence as to the proper charge for the services rendered by the Respondent in the case. The Hearing Officer does not consider the fact that Respondent, after the disciplinary proceeding was filed and after he had consulted counsel, refunded the $15,000 fee constituting the element (c) of his charge, as set

forth above, to the client as proof that the fee was "clearly excessive".

The two remaining grounds upon which proof that the fee charged in this case was "clearly excessive" could be:

(1)   A consideration of the fee by the Hearing Officer under the evidence and the criteria contained in DR 2-106 (B), or

(2)   Consideration of the fee allowed by the successor Special Judge in the judgment awarding the defendant (wife) alimony and the right to certain property.

In considering the first ground immediately hereinabove set forth, the Hearing Officer is aware of the holding of the courts in Indiana that a judge has the power to make an award of attorneys fees (where proper) without any evidence whatsoever by merely relying upon his own knowledge of what a reasonable attorney's fee should be. In this connection the Hearing Officer has attempted to review every case in the State of Indiana which might have any relevance upon the matter of the fee charged in this case. Very few cases in Indiana contain information about the reasonableness of fees in divorce cases. We do have one case which has some relevancy by way of dicta. In *Barelli* v. *Levin,* 144 Ind. App. 576 (1969) the Appellate Court of Indiana, in holding a contingent fee contract in a divorce case void as against public policy, stated:

> "In holding the fee contract in the case at bar is void, we are making no judgment as to its fairness or how it should be interpreted. It is void simply because it violates the public policy of this State."

The contract in that case called for a 15% contingent fee.

The services of the wife's attorney from the report of the case may be considered mainly as negotiating the property settlement. The evidence in the trial court in that case included the *minimum fee schedules* of several bar associations.

> ". . . In each schedule introduced, divorce fees are stated in terms of the percentage of the amount recovered. The percentages range upward from a fixed minimum fee plus

5% of the first $60,000 (in the schedule suggested in 1965 by a committee of the Indiana State Bar Association) to a straight 25% (in the schedule of the Gary, [Indiana] Bar Association) of the entire recovery. The Schedule of the Hammond [Indiana] Bar Association . . . calls for 15%."

*Barelli* v. *Levin, supra,* page 581. This Hearing Officer knows of no other expression of the courts of last resort in this state commenting on the reasonableness of fees in divorce cases, and although the Barelli opinion is not of much help, it does not criticize the *amount* of the fee in that case.

Just why the Appellate Court made a statement of the kind quoted above in the Barelli case can only be the subject of a guess, but it at least declined to say that a 15% contingent fee was unfair. If this, in fact, was the feeling of the Appellate Court in the Barelli case, it is difficult to see how a Hearing Officer (although of forty-three years total experience in the matter) can categorically state that a fee of approximately 20% of the recovery in a divorce case of the type involved in this proceeding is "clearly excessive".

As, to the second ground under which the fee might be considered as excessive, that is, the consideration of the fee allowed by the successor Special Judge, several facts should be taken into consideration. First, no authority has been submitted to the Hearing Officer that it is unethical under the rules in the State of Indiana for an attorney to charge a fee in addition or in excess of a fee allowed by the court where he feels that his services are thereby insufficiently compensated. In this case the evidence is that the attorney at some time during the pendency of the matters advised the client that if he felt that the fee allowed by the court was insufficient, he would charge her an additional fee.

The award made by the successor Special Judge, as far as the evidence before this Hearing Officer is concerned, was made without any request therefor, was not based upon any pleading on file in the case, had no testimony as to the services performed upon which it could be based, and was less than the

fee provided by any bar schedule that this Hearing Officer has had access to or information about. If this fee was to be a fee in full for the services of the Respondent, the Disciplinary Commission no doubt could have established such an intent by the testimony of the successor Special Judge, but such testimony was not forthcoming before the Hearing Officer.

By reason of the foregoing, the undersigned, the Hearing Officer in this cause, now within thirty days after the conclusion of the hearing as the date of such conclusion was fixed by agreement of the parties in this cause, determines that misconduct on the part of the Respondent has not been proven by a preponderance of the evidence, and now recommends to the Supreme Court that this case be disposed of by the same being dismissed, and that the request of the Disciplinary Commission that the Respondent be publicly reprimanded for his conduct in this case be denied.

Dated this 6th day of November, 1973.

PAUL R. SCHNAITTER
Hearing Officer and Judge

On November 30, 1973, the Disciplinary Commission filed a "Petition for Review." This Petition is overruled.

And now the Court being duly advised in the premises accepts the Findings of Fact and the Recommendations of the Hearing Officer. The cause is accordingly dismissed.

All Justices concur.

NOTE.—Reported in 305 N. E. 2d 305.