Cheryl AKE, et al. and Suzanne Bitski, et al., Appellants (Defendants Below),

v.

NATIONAL EDUCATION ASSOCIATION—SOUTH BEND, Appellee (Plaintiff Below).

No. 71A03–8709–CV–263.

Court of Appeals of Indiana, Third District.

Dec. 12, 1988.

Donald E. Wertheimer, John C. Hamilton, P.C., John C. Hamilton, South Bend, for appellants.

Richard D. Darko, Lowe, Gray, Steele & Hoffman, Indianapolis, Charles S. Leone, Stutsman, Leone & Clieffort, South Bend, for appellee.

STATON, Judge.

Nonmembers of the National Education Association—South Bend (NEA) teachers union appeal the decision of the trial court which upheld the validity of a collective bargaining agreement. Specifically, the teachers fault the bargaining agreement for not complying with the requirements announced in *Chicago Teachers Union v. Hudson [Hudson]* (1986), 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232, claiming that NEA is bound by *Hudson*, despite Indiana's "voluntary" payroll deduction requirement. Consequently, the following issues are before us for review:

I. Whether the fair share fee provision in the collective bargaining agreement is constitutional?

II. Whether Indiana's "voluntary" payroll deduction plan sets it apart from involuntary deduction plans which must follow *Hudson?*

III. Whether the teachers' failure to give notice under the Indiana Tort Claims Act affects the decision of the trial court?

We reverse.

### Standard of Review

■■ When reviewing the decision of the trial court, we presume the trial court applied the law correctly; the appellant must show reversible error. *Abels v. Mon-*

*roe County Educ. Ass'n* (1986), Ind.App., 489 N.E.2d 533, 540, *reh. denied,* (1986), Ind.App., 490 N.E.2d 775, *trans. denied, cert. denied,* (1987), 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518. We will set aside specific findings and conclusions of the trial court only when these are clearly erroneous. Further, we will consider only the evidence most favorable to the decision of the trial court, along with the inferences which can be reasonably drawn from it, but we do not reweigh evidence or judge witness credibility. *Id.* We will reverse where there is no evidence of probative value supporting the court's judgment. *Id.*

### Facts

The National Education Association of South Bend (NEA) exclusively represents school employees in collective bargaining matters. In question are two collective bargaining agreements, one covering the 1983–84 school year, the other, the 1984–85 school year. Included in both of these contracts is a "fair share fee" provision which discusses the duties of nonmember teachers to pay their share of the costs of collective bargaining and similar activities.[1]

Specifically, the paragraph in question reads:

> The Board and the Association agree that all members of the bargaining unit, who are not also members of the Association, have an obligation to pay a fair share fee to the Association in an amount, as deemed to be appropriate by the NEA–South Bend, based upon and consistent with the services rendered and cost incurred on behalf of the bargaining unit members said sum not to exceed 96% of the membership dues of the Association, including the Indiana State Teachers Association [ISTA] and the National Education Association [NEA]....

Professional Agreement, 1983–1984, Article II, Paragraph K, Section 2, Plaintiff's Exhibit 16, p. 3, Record, p. 1094; Professional Agreement, 1984–1986, Article II, Paragraph K, Section 2, Plaintiff's Exhibit 17, pp. 7–8, Record, p. 1095.

1. *Fort Wayne Educ. Ass'n v. Goetz* (1982), Ind. App., 443 N.E.2d 364, 369, disclosed the reason-

 While it is clear that NEA cannot deduct the fees from paychecks without the teachers' authorization, it is also clear that NEA retains the right to go to court to obtain such fees as it deems due from the nonmember teachers.

In this case, nonmember teachers refused to sign voluntary deduction forms or otherwise pay the fee. NEA filed suit to collect its fee; the teachers filed counterclaims alleging that the "fair share fee" provision was unconstitutional. The trial court found for NEA, sustaining the validity of Article II, § K. This appeal resulted.

### I.

### Constitutionality of the Fair Share Provision

The teachers claim that the fair share fee provision in the collective bargaining agreement is unconstitutional because it does not meet the standards enunciated in *Hudson.* Specifically, one of the faults the teachers point to is the usage of a rebate procedure to reissue to the teachers funds that were "overcollected" and used for political purposes.

As we discussed in *Fort Wayne Educ. Ass'n v. Aldrich [Fort Wayne]* (1988), Ind. App., 527 N.E.2d 201, the use of a rebate procedure is constitutionally inadequate. While teachers have the possibility of recouping their funds, *if* stringent procedural requirements are met, in the interim, their funds are used for political purposes with which they may disagree. As held by the United States Supreme Court, as well as our own courts, this cannot be condoned. The reasoning was succinctly stated in *Hudson* as follows:

> [A]s in *Ellis, [v. Brotherhood of Railway* (1984), 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428], a remedy which merely offers dissenters the possibility of a rebate does not avoid the risk that dissenters' funds may be used temporarily for an improper purpose. "[T]he Union should not be permitted to exact a service fee from nonmembers without first

ing in support of fair share fees, primarily the prohibition of "free riders."

establishing a procedure which will avoid the risk that their funds will be used, even temporarily, to finance ideological activities unrelated to collective bargaining." *Abood*, [*v. Detroit Board of Education* (1977), 431 U.S. 209, 244, 97 S.Ct. 1782, 1804, 52 L.Ed.2d 261, *reh. denied*, 433 U.S. 915, 97 S.Ct. 2989, 53 L.Ed.2d 1102], (concurring opinion).... [W]hatever the amount, the quality of respondents' interest in not being compelled to subsidize the propagation of political or ideological views that they oppose is clear.... A forced exaction followed by a rebate equal to the amount improperly expended is thus not a permissible response to the nonunion employees' objections.

*Hudson, supra*, 106 S.Ct. at 1075.

■ Accordingly, the fair share fee provision in the collective bargaining contract does not comply with the requirements of constitutionality as put forth in *Hudson;* NEA cannot rely on an unconstitutional rebate procedure to restore funds it improperly collected pursuant to the fair share fee provision.

## II.

### *Voluntary Deduction*

The teachers claim that there is, in effect, no difference between involuntary deduction plans, to which the *Hudson* requirements apply, and Indiana's "voluntary" system, under which unions cannot deduct fees from employees' paychecks without authorization, but can obtain a court order enforcing the employees' obligation to pay the fee.

■ There has been much discussion about whether *Hudson* applies to Indiana fair share fee provisions, primarily because Indiana precludes involuntary payroll deductions. However, in the recent *Fort Wayne* case, we held that Indiana fair share fee agreements must comply with the *Hudson* requirements, inasmuch as the payments themselves are not voluntary. Specifically, we stated,

Although Indiana forbids both involuntary payroll deductions and making the representation fee a condition of employment, the word "voluntary" ascribed to Indiana's system is misleading. *The requirement that payroll deductions be voluntary does not make the payment itself voluntary.* While not a condition of employment, *Indiana's nonmember teachers are required, under Indiana law and the terms of the Master Contract, to pay the fee.* Thus, with or without voluntary payroll deductions, *the payment is mandatory.* Consequently, since the payment is not voluntary, the rights of Indiana teachers are no less infringed upon than their Illinois counterparts. Therefore, we hold today that the nonmember teachers are entitled to the protections announced in the *Hudson* decision. (Emphasis added.)

*Fort Wayne, supra,* at 207. Consequently, NEA, too, is bound by the requirements announced in *Hudson.*

## III.

### *Notice Under the Indiana Tort Claims Act*

[6] While NEA claims that the teachers' failure to give notice under the Indiana Tort Claims Act (ITCA) supports the trial court's judgment against the teachers, we find no support for this assertion in the Indiana Tort Claims Act.

As NEA indicates, ITCA "applies only to a claim or suit in tort." West's AIC 34–4–16.5–1. However, that is not the sole restriction governing the application of this act. The title reveals that ITCA applies to "Tort Claims Against Governmental Entities and Public Employees," and, under section 7(a),

Except as provided in section 8 of this chapter, a claim against a *political subdivision* is barred unless notice is filed ... (Emphasis added.)

West's AIC 34–4–16.5–7(a) (Supp. 1988). Thus, unless the party is a political subdivision, the adverse party need not give notice pursuant to this act.

"Political subdivision" and similar terms are defined in sections 2 and 20 of this act. The pertinent parts of section 2 are:

(c) "Governmental entity" means the state or a political subdivision of the state.

\* \* \* \* \* \*

(f) "Political subdivision" means a:
(1) county;
(2) township;
(3) city;
(4) town;
(5) separate municipal corporation;
(6) special taxing district;
(7) state college or university;
(8) city or county hospital;
(9) school corporation; or
(10) board or commission of one (1) of the entities listed in subdivisions (1) through (9).

(g) "State" means Indiana and its state agencies.

(h) "State agency" means a board, commission, department, division, governmental subdivision including a soil and water conservation district, bureau, committee, authority, military body, or other instrumentality of the state. However, the term does not include a political subdivision.

West's AIC 34-4-16.5-2 (Supp. 1988). Under section 20, "political subdivisions" also includes certain "community action agencies," public transportation services, and volunteer fire companies. We fail to see how either definition can include NEA, defined elsewhere in the Indiana Code as a "School Employee Organization."[2]

Consequently, as NEA is not a "governmental entity" according to the terms of ITCA, the teachers were not required to give notice under that act, and their failure to do so can have no bearing on the trial court's decision.

Because the fair share fee provision allows funds to be collected and used for political purposes, contrary to *Hudson*, it is unconstitutional. Nor are its defects cured by the similarly unconstitutional rebate procedure. As decided in *Fort Wayne*, the teachers are required to pay the fair share

2. See: West's AIC 20-7.5-1-2(k).

fee; *Hudson*, therefore, governs its collection.

REVERSED.

GARRARD and SHIELDS, P.JJ., concur.