Morton NESSES d/b/a Winick & Nesses, Plaintiff–Appellant,

v.

SPECIALTY CONNECTORS CO., INC., Defendant–Appellee.

No. 03A01–9007–CV–301.

Court of Appeals of Indiana, First District.

Dec. 20, 1990.

Paul H. Johnson, Jr., Donaldson, Andreoli & Truitt, Lebanon, for plaintiff-appellant.

Robert G. Weddle, Mary Hamilton Watts, Nana Quay–Smith, Bingham, Summers, Welsh & Spilman, Indianapolis, for defendant-appellee.

BAKER, Judge.

Plaintiff-appellant Morton Nesses d/b/a/ Winick & Nesses (Nesses) appeals the trial court's dismissal with prejudice under Ind. Trial Rule 37(B) of his action for breach of contract against defendant-appellee Specialty Connectors, Inc. (Specialty). Nesses also appeals the trial court's award of attorney fees to Specialty. The issues for our review are whether the trial court properly dismissed the action and properly awarded attorney fees. We affirm.

The facts underlying the litigation are not material. The issues revolve around Nesses's contumacious and dilatory conduct during the litigation.

In October 1988, Nesses filed his suit *pro se* in Johnson County, and after he requested a change of venue, the case was transferred to Bartholomew Superior Court before Judge Chris Monroe. At a pre-trial conference on March 3, 1989, Judge Mon-

roe informed Nesses that scheduling difficulties should not be resolved with the court clerk, but rather with Judge Monroe himself. Nesses responded by moving for a change of judge, asserting Judge Monroe was biased and guilty of making unfounded criminal accusations against him. After a hearing at which both parties were present, Judge Monroe denied the motion.

After the pre-trial conference, the court set June 1, 1989 as the discovery cut-off date, and June 8, 1989 as the final pre-trial conference date. From the subsequent conduct and discussions of the parties and the court, it appears Judge Monroe spoke the word "tentative" at the March 3 hearing when he set the June 1 and June 8 deadlines, though his written order clearly was not tentative. *Record* at 59. Nesses leapt upon the use of the word tentative to request an extension of both dates because those "arbitrary and capricious" dates prevented him from earning his living while trying to comply with a discovery order, "which said discovery is being deliberately manipulated by the opposing party with the assistance of the Court." *Record* at 89 ("Verified Motion for Immediate Hearing for Matter Relating to Discovery and Request to Vacate Discovery Deadline and Final Pre–Trial Conference"). The next page of this fanciful motion accuses the court of placing discovery obstacles in Nesses's path. *Record* at 90.

Judge Monroe granted Nesses a hearing on the motion. At the hearing, Nesses engaged in several long colloquies with Judge Monroe, but his primary complaints, which had little to do with the reason for the hearing, were twofold: first, he argued the attestation language of some of Specialty's answers to interrogatories was incomplete, even though counsel for Specialty had agreed to change the language. Second, Nesses complained of counsel for Specialty's insertion of the word "sic" into his interrogatories, arguing the word changed the meaning of the interrogatories. Judge Monroe naturally wanted to know what alternative dates Nesses would

suggest for the discovery deadline and the final pre-trial conference, but he had to ask Nesses 13 times to get an answer, because Nesses insisted on interrupting and discussing the tangential matters mentioned above. *Record* at 348–55. After displaying the patience of Job in response to Nesses's rambling and insulting discourse, Judge Monroe told Nesses he was the rudest person ever to appear in his court, including criminal defendants.[1] *Record* at 368. Eventually, the court and the parties settled on an August 30, 1989 discovery deadline and a September 7, 1989 final pre-trial conference. Judge Monroe also discovered that Nesses, who is a competitor with Specialty, refused to sign a standard confidentiality agreement before being allowed to view Specialty's business documents. Counsel for Specialty revealed he had made several efforts to get the documents to Nesses, but that Nesses simply refused to sign.

In the saga's next chapter, Nesses moved for production of Specialty's documents without the prerequisite of signing a confidentiality agreement. Nesses also moved for a protective order regarding Specialty's interrogatories because Specialty had not let him see their documents without signing the confidentiality agreement. In response, Specialty moved to compel production of Nesses's documents and to obtain a protective order over its own documents. Judge Monroe thereupon reset the discovery deadline for October 30, 1989, and ordered a hearing on all motions for September 19, 1989. At this point, Specialty moved to dismiss, leading Nesses to hire counsel.

At the September 19, 1989 hearing, counsel for both parties agreed to make the protective order mutual, which left only the motion to dismiss to be resolved. Discussing the motion to dismiss, Judge Monroe stated:

> I have read and reread and quite frankly the reason we have had so many hear-

---

1. Judge Monroe acknowledged he had been on the bench for only six months when he made this statement. Thus, there will be ample opportunity for him to test the statement's validity in the future.

ings is because I could not understand Mr. Nesses' motions. And then we had hearings, quite frankly, I wasn't able to understand anything more than what I had before. I remember one hearing in particular Mr. Nesses had a pad of paper written out and he began a recitation from that and I asked some questions and he was unable to understand what it was he was asking the Court to do.... Uh hopefully, now that Mr. Nesses has counsel it will not be a problem and hopefully we won't have the need for hearings on those types of things. But uh Mr. Nesses, just let me set out a few things. We are not going to delay. I don't know what you intend to do from this point. *Whether you intend to keep your attorney throughout or if he may offend you at some point and you may discharge him....* We are going to set some deadlines when we get these deadlines set, we are going to follow them. And if you decide to change counsel in the middle of the ballgame, particularly since you are the plaintiff and you brought the action, uh we're not going to change any deadliens [sic] and if you are not prepared to go to trial when it is set for trial, and if you are not completing discovery, *and if you're not complying with discovery, then uh you are looking at a real good shot at getting it dismissed....* We were spending all of our time talking about stuff I couldn't understand what you were asking. And so far, it appears that we are getting some of that resolved. But if we get back into that again, uh *I think that the motion is well taken and that there is a good shot that it could be dismissed if we get into that type of behavior again....* You've got an idea what I'm looking for. Uh if some problems arise from the defendant's point of view, we will reconsider it and uh take a look at it at that time.

*Record* at 385–91 (emphasis added).

By mid-December, Nesses's counsel had resigned "because of philosophical differences in the conduct of [the] case." *Record* at 231. The resignation was confirmed at the next hearing on January 19, 1990, at which time Nesses asked for an-

other extension of the date for the final pre-trial conference. This last request led Specialty to move the court to reconsider its earlier motion to dismiss. When Judge Monroe asked Specialty's counsel for less harsh alternatives, she answered she would like to obtain previously requested documents and receive a response to her settlement offer. In responding to the judge's question about the nature of the documents requested, Specialty's counsel referred to Nesses's unpublished deposition. Nesses did not object, but also discussed the unpublished deposition. In the end, because Nesses was claiming damages from lost income, the court ordered Nesses to produce his 1987 financial records, including income tax returns, for Specialty, and warned Nesses of the likelihood of dismissal for failure to comply. *Record* at 439–40. He also informed Nesses that he would tolerate no further delay. *Record* at 440. At this point, counsel for Specialty informed the court she had also requested tax returns for 1984, 1985, and 1986, and Judge Monroe asked Nesses if he knew of any reason why those records should not be produced. Nesses began to protest that these records were protected, and then advised the court to ask his recently discharged lawyer, who was still in the courtroom, to answer the question. Judge Monroe tried to ask another question, but Nesses interrupted him, leading the judge to threaten Nesses with contempt and the possible penalty of incarceration. *Record* at 442. Eventually, Judge Monroe ordered Nesses to provide Specialty with his business financial records and his income tax returns for 1984–1987 by 12:00 noon, February 20, 1990. *Record* at 444–45. Judge Monroe admonished Nesses that "[f]ailure to comply with this order, Mr. Nesses, will very likely run the risk of this law suit being dismissed for your failure to make reasonable with the lawsuit that you yourself filed." *Record* at 445–46. The judge also ordered Nesses to respond to Specialty's formal settlement offer by February 22, 1990. *Record* at 450. Finally, Judge Monroe set July 31, 1990 for the trial date and told counsel for Specialty to set the date for the final pre-trial conference. To

Mr. Nesses, his final remark was: "[i]f you are not prepared to proceed at the pre-trial conference in the matter [sic] prescribed by the trial rules, it is also likely, assuming the authority is there, the matter can be dismissed." *Record* at 454. Mr. Nesses responded that he understood the court's order. *Record* at 454.

On March 22, 1990, another hearing was held on Specialty's motion to dismiss. Counsel for Specialty informed the court that Nesses had provided Specialty with his tax records two days late, on February 22, 1990, but has not submitted his business financial records. Nesses's new counsel had informed Specialty that Nesses had no business financial records beyond his income tax returns, despite the fact that Nesses had said in his unpublished deposition and at the January 19, 1990 hearing that he indeed had such records. Moreover, counsel for Specialty informed the court that she believed Nesses's response to the formal settlement offer was not in the form required by the court's order. Counsel's belief was predicated on the fact that Nesses's response included a condition that Specialty purchase several thousand dollars' worth of parts from Nesses. *Record* at 275–276. This condition was in contradiction to Nesses's statement at the January 19, 1990 hearing that he had used those parts elsewhere. *Record* at 446. Accordingly, counsel for Specialty again asked the court for dismissal. Nesses's new counsel neither objected nor counter argued, instead responding that "[w]e have nothing to offer at this time, Your Honor." *Record* at 462. The court took the motion under advisement.

The next day, March 23, 1990, the court granted Specialty's motion and dismissed Nesses's action with prejudice. On May 16, the court held a hearing on costs, at which Specialty's counsel presented an affidavit with the names of the individual attorneys involved, the amount of time they had spent on the case, the hearings they had attended, the pleadings they had filed, and the expenses they incurred in filing their motions. Nesses moved to strike on hearsay grounds, and Specialty responded with a second affidavit containing billing statements with the date, time, fee, and nature of all the services rendered. Judge Monroe granted Specialty $4,367.32 for attorney fees.

## DECISION

[1] At the outset, we wish to commend Judge Monroe for having the patience to give Nesses every benefit of the doubt. Our Constitution mandates that the courts be open to all litigants, IND. CONST. art I, § 12, and, having thoroughly reviewed all the transcripts before us, there is no doubt that Nesses's conduct proved how far Judge Monroe was willing to go to adhere to the Constitution's prescription. Judge Monroe, of course, was not required to be as lenient as he was: *pro se* plaintiffs are held to the same rules of procedure as licensed attorneys, *Creedon v. Asher Truck & Trailer, Inc.* (1989), Ind.App., 535 N.E.2d 148, and no one should misconstrue Judge Monroe's actions as anything more than a gracious accommodation.

## I

### TRIAL RULE 37(B) SANCTIONS

Ind.Trial Rule 37(B) provides trial courts with sanctions they may impose on litigants for failure to comply with discovery orders.

> If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . . .
>
> (c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.
>
> . . . .
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure

was substantially justified or that other circumstances make an award of expenses unjust.

T.R. 37(B)(2)(c). Whether to impose a sanction of dismissal for refusal to comply with discovery orders is a matter for the trial court's discretion. *Mulroe v. Angerman* (1986), Ind.App., 492 N.E.2d 1077. Indiana does not require trial courts to impose lesser sanctions before applying the ultimate sanction of dismissal or default judgment. *Burns v. St. Mary Medical Center* (1987), Ind.App., 504 N.E.2d 1038; *Mulroe, supra*. This is especially true when the disobedient party has demonstrated contumacious disregard for the court's orders, "and the conduct of that party has or threatens to so delay or obstruct the rights of the opposing party that any other relief would be inadequate." *Whitewater Valley Canoe Rental, Inc. v. Franklin Cty. Bd. of Commissioners* (1987), Ind.App., 507 N.E.2d 1001, 1008, *trans. denied.*[2]

■ Here, Judge Monroe allowed several delays and made a true effort to accommodate this *pro se* plaintiff. He repeatedly, over the course of six months, warned Nesses that he would dismiss the case if Nesses did not comply with orders. Moreover, at the January 19, 1990 hearing, he asked Specialty's counsel what alternatives short of dismissal would resolve Specialty's problems. Specialty repeated its discovery and settlement requests, which were eminently reasonable, and Judge Monroe told Nesses to comply with those requests. That Nesses chose not to comply was his own doing, and Judge Monroe did not abuse his discretion in the least by granting the motion to dismiss after the March 22, 1990 hearing.

■ We are not persuaded that the mentioning of the unpublished deposition led to error on Judge Monroe's part. While it is true that an unpublished deposition is not part of the record, *Augustine v. First Federal Savings and Loan Ass'n. of Gary* (1976), 270 Ind. 238, 384 N.E.2d 1018,[3] we presume the trial court followed the law correctly. *Ake v. National Educ. Ass'n.* (1988), Ind.App., 531 N.E.2d 1178. Accordingly, absent some affirmative demonstration by Nesses that Judge Monroe relied on the unpublished deposition in deciding to dismiss, we see no reversible er-

**2.** Prior to amendments in 1982, T.R. 37(B) read in pertinent part:

> To avoid abuse of discovery proceedings and to secure enforcement of the discovery provisions of these rules in any enforcement or protective proceedings under the discovery provisions of these rules or upon motion and notice by a party, witness or person to any persons affected thereby:
>
> . . . .
>
> (2) The court may allow expenses, including reasonable attorney's fees, incurred by a party, witness or person, against a party, witness or person responsible for unexcused conduct that is:
>
> . . . .
>
> (c) in bad faith and abusively resisting or obstructing a deposition, interrogatories, production of evidence, inspection, examination, request, question, enforcement order, subpoena, protective order or any other remedy under the discovery provisions of these rules.
>
> . . . .
>
> (4) The court may enter total or partial judgment by default or dismissal with prejudice against a party who is responsible under subdivision (B)(2) of this rule if the court determines that the party's conduct has or threatens to so delay or obstruct the rights of the opposing party that any other relief would be inadequate.

The language quoted above is not as strict as the language of T.R. 37's present incarnation quoted in the text, which deletes the bad faith requirement and allows dismissal, if just, on failure "to obey an order to provide or permit discovery." T.R. 37(B)(2). Accordingly, while cases discussing the pre–1982 version and cases since 1982 which relied on the earlier cases remain instructive, *see Whitewater Valley Canoe Rental, Inc., supra*, and *Justak v. Bochnowski* (1979), 181 Ind.App. 439, 391 N.E.2d 872, *cert. denied* (1980), 449 U.S. 828, 101 S.Ct. 92, 66 L.Ed.2d 31, the emphasis of the rule has shifted. Today, the threshold level of conduct which will subject a party to default or dismissal without the prior imposition of lesser sanctions is lower than it was before the 1982 amendments, and the trial judge need not find "that the party's conduct has or threatens to so delay or obstruct the rights of the opposing party that any other relief would be inadequate" before granting a default or dismissal. Rather, such conduct today serves to tip the scales of discretion even more heavily in favor of default or dismissal than does disobedience without such conduct.

**3.** Effective January 1, 1991, Ind.Trial Rule 5(D) will contain a new subsection (5), providing that "[t]he filing of any deposition shall constitute publication".

ror. Moreover, at the January 19, 1990 hearing, Nesses himself discussed at length the business records which were mentioned in the unpublished deposition. If there was error, Nesses invited it, and it does not lie with the party who invites error to complain of it later. *Reffett v. State* (1990), Ind.App., 557 N.E.2d 1068.

## II

### ATTORNEY FEES

■ As for the award of attorney fees, we likewise see no error. Nesses argues this case is not the type of routine case to which the rule stated in *In re Lockyear* (1974), 261 Ind. 448, 305 N.E.2d 440 allowing fees on judicial notice applies. We agree, but the analysis does not end there. In addition to Judge Monroe's detailed knowledge of the at least seven hearings held before him and of the matters discussed in those hearings, Specialty's counsel presented detailed evidence of its fee, including hourly rates and the hours individual attorneys spent on various aspects of the case. Together, Judge Monroe's knowledge and counsel for Specialty's affidavits were sufficient to establish a reasonable fee.

Our holding on this question is in accord with our supreme court's recent decision in *Kahn v. Cundiff* (1989), Ind., 543 N.E.2d 627, adopting Chief Judge Ratliff's decision and opinion in *Kahn v. Cundiff* (1989), Ind.App., 533 N.E.2d 164. In *Kahn*, which reaffirmed the rule of *In re Lockyear*, *supra*, the affidavits supporting the amount of attorney fees were internally inconsistent and did not distinguish between fees incurred on behalf of the defendant properly sued and those incurred on behalf of the defendant who was frivolously sued. Accordingly, the case was remanded for a hearing on fees. No such infirmities are alleged to exist in the affidavits presented to Judge Monroe, and this fact brings us to the second reason we uphold the award of attorney fees.

■ It is axiomatically the appellant's responsibility to supply us with a record to review. Nesses has chosen not to provide us with a transcript of the hearing on fees and costs. We will not review alleged errors attributed to matters outside the record before us. *Emmons v. State* (1986), Ind., 492 N.E.2d 303. *See also State v. Kuespert* (1980), Ind.App., 411 N.E.2d 435. In *Kuespert*, Judge Ratliff writing for a unanimous court upheld the trial court's award of attorney fees in a T.R. 37(B)(2) case in which the appellant failed to provide a transcript of the fee hearing for appellate review.

This is the situation before us now, and the rationale for allowing the fees today is even stronger than it was at the time of the *Kuespert* decision given the changes in T.R. 37 wrought by the 1982 amendments. *See* n. 2, *supra*. T.R. 37 today allows trial courts to award attorney fees "unless the court finds that the failure [to comply with a discovery order] was substantially justified or that other circumstances make an award of expenses unjust." T.R. 37(B)(2). Judge Monroe made no such finding, and Nesses did not present him with any arguments that would have supported such a finding.[4] The judge was well within his discretion to award the attorney fees. *See also Best v. Best* (1984), Ind.App., 470 N.E.2d 84 (trial court's award of $500 in attorney fees under T.R. 37(B)(2) justified when party failed to produce ordered financial records and opposing party produced evidence of $720 in attorney fees resulting from the disobedient party's actions).

For all of the foregoing reasons, the judgment of the trial court is affirmed.

RATLIFF, C.J., concurs.

HOFFMAN, P.J., concurs with opinion.

---

4. Instead of attempting to justify his failure to comply, Nesses argued that Judge Monroe could not award fees on judicial knowledge alone and that counsel for Specialty's affidavits were inadmissible hearsay. As we stated earlier, Nesses is correct that this is not a routine case falling under the rule of *In re Lockyear, supra,* but his latter argument is wholly without merit. Affidavits are regularly used to establish attorney fees. *See Kahn, supra; Wisconics Engineering, Inc. v. Fisher* (1984), Ind.App., 466 N.E.2d 745, *trans. denied.*

HOFFMAN, Presiding Judge, concurring.

I concur in the majority opinion except that part which penalizes the appellant for not supplying this Court with a part of the record.

Ind.Appellate Rule 7.2(B) states in plain unambiguous language that *"PARTS WHICH ARE NOT TRANSMITTED TO THE COURT ON APPEAL SHALL NEVERTHELESS BE A PART OF THE RECORD ON APPEAL FOR ALL PURPOSES."* [Emphasis added.]

There can be no other meaning given this sentence. It can be interpreted no other way. *If a record exists* in the trial court, it is part of the record on appeal regardless of whether or not the praecipe requested the same or counsel fails to have it included in the record filed in the appeals court. The appeals court should order the record sent by writ of certiorari or order the appropriate counsel to provide the same.

Clear and unambiguous rules should be followed by the court at all times and not disregarded to avoid answering the issues raised.