In re the Marriage of Mary Ann
PIERCE, Appellant–
Defendant,

v.

William J. PIERCE, Appellee–Plaintiff.

No. 45A03–9705–CV–168.

Court of Appeals of Indiana.

Dec. 10, 1998.

Rehearing Denied Feb. 8, 1999.

Melanie M. Sterba, Jill S. Swope, Scherer-
ville, for Appellant–Plaintiff.

Mark A. Bates, Schererville, for Appellee–
Plaintiff.

## OPINION

RATLIFF, Senior Judge.

## STATEMENT OF THE CASE

Respondent–Appellant Mary Ann Pierce ("Mary Ann") appeals from an order terminating spousal maintenance entered in favor of Petitioner–Appellee William J. Pierce ("William") as a sanction for non-compliance with discovery.

We affirm.

## ISSUES

Mary Ann raises several issues [1] which we consolidate and restate as:

I.   Whether the trial court erred in ordering the termination of spousal maintenance as a sanction for failure to comply with discovery orders.

II.   Whether Mary Ann should be awarded attorneys fees for prosecuting this appeal.

## FACTS AND PROCEDURAL HISTORY

William and Mary Ann were divorced on July 3, 1990. As a term of the Property Settlement Stipulation, William agreed to pay spousal maintenance of $1500 per month to Mary Ann due to her incapacity, paranoid type schizophrenia. The agreement contained several provisions spelling out which events could potentially trigger a modification of the spousal maintenance amount. Those events included subsequent marriage or cohabitation, acquisition of assets, failure to comply with treatment programs, and a change in William's income level. In addition, Mary Ann was ordered to apply for Social Security disability, Medicare and other benefits, which if received, would result in a reduction of the spousal maintenance amount. A guardianship was established for Mary Ann in a separate cause of action.

Approximately four years after the divorce, William filed a petition to modify the terms of the dissolution. He alleged that one or more of the triggering events had occurred, and that Mary Ann and/or her guardian had failed to apply for Social Security disability benefits.

Both parties cite to portions of the record which detail the history of the case and discovery process and the numerous difficulties which arose therewith. In an apparent effort to justify her own behavior, Mary Ann cites to a portion of the record which discloses that William was once ordered to comply with a discovery request. However, William ultimately complied with the discovery order.

The history of the discovery process which is relevant for purposes of this appeal began with William's motion for production which was sent to counsel for Mary Ann and her Guardian Jacob Rakoczy on March 20, 1995. After several faxed requests and certified letters requesting the documentation, on September 22, 1995, William filed a motion to compel discovery. On September 26, 1995, the trial court entered an order compelling Mary Ann and her guardian to fully comply with the motion for production within 30 days. In March of 1996, William sent another certified letter to Mary Ann requesting compliance with the court's order. In April of 1996, William sent a certified letter to Mary Ann again requesting compliance, and notifying Mary Ann that William would file another motion to compel discovery if there was no compliance. William did file a motion to compel and requested that Mary Ann or her guardian be found in contempt, that sanctions be imposed, including terminating the maintenance, incarceration until compliance, attorney fees and any other sanction the court found appropriate. The trial court found that Mary Ann and her guardian had not complied with the trial court's September 1996 order, and on June 26, 1996, ordered them to produce all outstanding discovery within 10 days or an immediate termination of all spousal support would be ordered. The court included in its order the statement that

---

1.   Mary Ann raises several issues claiming that spousal maintenance was improperly terminated without a hearing on the merits of the petition. However, these issues as stated miss the mark. The record is clear that the spousal maintenance was terminated as a sanction for non-compliance with discovery orders. Thus our analysis will address the question of whether termination of spousal maintenance was proper as a discovery sanction, and not whether there was procedural compliance with statutory and case law requirements for a hearing on the merits.

William was entitled to an award of attorney fees which would be determined after a further hearing on the request. Mary Ann filed a motion to set aside shortly thereafter. On August 28, 1996, the trial court granted William's motion to terminate spousal maintenance as a sanction for Mary Ann's failure to comply with discovery. Subsequently, Mary Ann filed another motion to set aside.

During a hearing on the motion to set aside held on November 4, 1996, Mary Ann's attorney attempted to set aside the court's orders of June 26, 1996, and August 28, 1996. Mary Ann later filed a petition to reinstate spousal maintenance and a motion to correct errors. A hearing on that motion and petition was held in January of 1997. All of these motions were denied by the trial court.

The discovery materials which were sought would have determined William's success or failure to prove that one of the triggering events had occurred, justifying either a reduction, increase, or no change in the maintenance amount. He sought from Mary Ann among other things, copies of bank account statements, copies of federal and state tax returns, copies of documents regarding the sale or transfer of real estate, copies of pension account statements, copies of life insurance policy information, and copies of automobile titles and registrations. Without the information William could not pursue his claim effectively, but was still required to continue paying the spousal maintenance amount while he awaited receipt of the documentation. The first attempt by Mary Ann and her guardian to comply with the discovery request occurred in October of 1996. Moreover, Mary Ann and her guardian failed to explain why the discovery requests and orders were not complied with, nor was there an explanation of difficulties encountered in gathering the requested materials at any time including during any of the hearings until October of 1996.

## DISCUSSION AND DECISION

### STANDARD OF REVIEW

■ A trial court is vested with broad discretion in ruling on discovery issues. *Marshall v. Woodruff,* 631 N.E.2d 3, 5 (Ind. Ct.App.1994). We will interfere with the trial court's decision only where we find an abuse of that discretion. *Id.* In order to demonstrate reversible error, the moving party must show that he was prejudiced by the ruling. *Id.*

### I. TRIAL RULE 37(B) SANCTIONS

■ The Indiana rules of discovery are designed to allow a liberal discovery procedure, the purposes of which are to provide parties with information essential to litigation of all relevant issues, to eliminate surprise, and to promote settlement. *Id.* Discovery is designed to be self-executing with little, if any, supervision of the court. *Id.*

Ind. Trial Rule 37(B) provides trial courts with the sanctions they may impose for noncompliance with discovery orders. *Id.* The rule provides as follows:

(2) If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

\* \* \*

(a) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.

\* \* \*

(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any party thereof, or rendering a judgment by default against the disobedient party.

T.R. 37(B)(2)(a) & (c).

■ Whether to impose the ultimate sanction of dismissal or default is a matter for the trial court's discretion. *Marshall,* 631 N.E.2d at 5. Moreover, a trial court is not necessarily required to impose a lesser sanction before dismissal or default judgment. *Id.* This is especially true when the disobedient party has demonstrated contumacious disregard for the court's order to

the extent that it has or threatens to delay or obstruct the rights of the opposing party so that any other relief would be inadequate. *Nesses v. Specialty Connectors Co., Inc.*, 564 N.E.2d 322, 327 (Ind.Ct.App.1990).

In the present case, William first requested documentation from Mary Ann and her guardian in March of 1995. He waited until September of 1995, after attempts by telephone, certified mail and fax proved unsuccessful, to file a motion to compel production which was granted with a 30 day response deadline. William made further attempts to obtain the documents by sending requests by certified mail in March and April of 1996. William filed another motion to compel production which was granted by the trial court in late June of 1996 with a compliance deadline of 10 days and a warning that failure to comply would result in termination of spousal maintenance. William petitioned the court for termination of spousal maintenance due to the non-compliance with discovery. This petition was granted in August of 1996. Throughout this time period, Mary Ann did not provide to the court or to William reasons attempting to explain difficulties in obtaining the requested documentation, failure to provide the requested documentation, or requesting extensions of time in which to comply. Meanwhile, William was required to continue to make the spousal maintenance payments absent the records Mary Ann and her guardian possessed which he needed to establish a change in that amount.

In late October of 1996, Mary Ann claimed that she did not comply because her guardian was out of the country for three months. Mary Ann also claimed that her guardian did not know that income tax returns needed to be prepared to report the maintenance income. However, the guardian had those tax returns prepared by an accountant, but were not completed until early October of 1996. No other reasons were provided for failure to produce the other requested documentation.

Mary Ann further argues, citing *Drake v. Newman*, 557 N.E.2d 1348, 1352 (Ind.Ct.App. 1990), that the trial court was required under T.R. 37(B) to conduct a hearing in order to ascertain whether non-compliance with dis-covery was justified or whether a sanction would be unjust. In *Drake*, we held that when a motion to compel is granted and the moving party requests reimbursement for expenses associated with bringing the motion, the trial court should hold a separate hearing to determine whether the non-moving party's non-compliance was justified or whether circumstances would make the award of expenses unjust. 557 N.E.2d at 1352.

We believe that Mary Ann is attempting to bootstrap her argument that a hearing on the merits of the petition to terminate spousal maintenance should have been held to the hearing requirement for the award of attorney fees or expenses under T.R. 37. While it is true that the court, in its order of June 1996, made the finding that William was entitled to an award of attorney fees as the result of granting the motion to compel, the order further stated that the fees awarded "shall be determined after further hearing upon petitioner's request." (R. 214–215). We can find nothing in the record to indicate that William pursued the award of attorney fees. In fact, the remedy William pursued was termination of the spousal maintenance. For that reason, Mary Ann's argument fails.

While we acknowledge that the loss of $18,000 of income per year is significant, in light of the patience displayed by William and the trial court, the multiple opportunities given for future compliance in the face of repeated non-compliance, in addition to the warning given, we find that the trial court did not abuse its discretion in its choice of sanction. We previously have held when the party alleged to have not complied with discovery orders has been given an additional reasonable period within which to respond, was warned in advance that dismissal or entry of a default judgment would be the penalty for non-compliance, and no response or request for additional time was timely made, nor was a reason excusing the past non-compliance demonstrated, that there was no abuse of discretion on the part of the trial court for imposing the sanction. *Burns v. St. Mary Medical Center*, 504 N.E.2d 1038, 1039 (Ind.Ct.App.1987); *Nesses v. Specialty Connectors Co., Inc.*, 564 N.E.2d 322, 327 (Ind.

Ct.App.1990); *Marshall v. Woodruff,* 631 N.E.2d 3, 5–6 (Ind.Ct.App.1994).

## II. ATTORNEY FEES FOR PROSECUTION OF APPEAL

Mary Ann initially renewed on appeal the argument she advanced at the hearings on her motions to set aside and motion to correct errors that the June 1996 order, warning of termination of spousal maintenance upon non-compliance within 10 days of the discovery order, was obtained by fraud, and that Mary Ann was entitled to appellate attorney fees for prosecution of this appeal.

We note that the alleged violation of the Lake County Rules of Family Law, which requires exchange of orders prepared by counsel to provide an opportunity for opposing counsel to object to portions of the draft, was presented to the trial court. The trial court directed William's counsel to prepare the order. Mary Ann's counsel claimed that she did not have the opportunity to review the draft of the order prior to presentation to the trial court for signing. William's counsel claimed that he had sent a copy of the proposed order to Mary Ann's counsel and to the court. The order was signed by the court.

Subsequently, counsel for Mary Ann presented her objections to the proposed order to the court on at least two occasions. Although Mary Ann's counsel originally contested the 10 day deadline, she told the court that she "would have to live with that." (R. 283). Mary Ann's counsel objected to the language in the order stating that William was entitled to an award of attorney fees, the amount of which would be determined in a subsequent hearing. William asserts that the language accurately reflects the court's directive. However, there is nothing in the record to indicate that those attorney fees were pursued. Further, Mary Ann's counsel objected to the language in the order warning Mary Ann that non-compliance with the order would result in termination of the spousal maintenance amount. Again, William's counsel asserts that the language in the order is accurate.

The trial court heard Mary Ann's argument and apparently rejected it. While the evidence is conflicting, there is evidence in the record to support the trial court's decision. We decline to reweigh the evidence presented to the trial court on this issue.

In her reply brief Mary Ann agrees with William that this matter should be remanded for a determination by the trial court.

Ind.Code § 31–15–10–1 provides as follows:

(a) The court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees and mediation services, including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.

(b) The court may order the amount to be paid directly to the attorney, who may enforce the order in the attorney's name.

This statute refers to the powers of a trial court in proceedings involving the dissolution of marriage or legal separation.

We have held that the trial court retains jurisdiction even after perfection of the appeal to make an award of appellate attorney fees and in what amount. *Wagner v. Wagner,* 491 N.E.2d 549, 555 (Ind.Ct.App. 1986); *but see, Hudson v. Hudson,* 484 N.E.2d 579, 583 (Ind.Ct.App.1985).

Accordingly, the trial court in this case has the appropriate jurisdiction to determine if appellate attorney fees should be awarded and in what amount.

## CONCLUSION

The judgment of the trial court is affirmed regarding termination of spousal maintenance as a sanction for violation of discovery orders. We remand the matter of the award of appellate attorney fees to the trial court.

STATON, J., concurs.

DARDEN, J., dissents with opinion.

DARDEN, Judge, dissenting.

I respectfully dissent. In my view, the trial court abused its discretion by imposing what I perceive to be the equivalent of a "civil death penalty" to sanction Mary Ann, an incapacitated individual, for the failure of her guardian and attorney to timely produce requested documents and comply with the trial court's discovery orders. While I agree that the trial court was clearly justified in imposing sanctions under Ind. Trial Rule 37, I believe terminating spousal maintenance for Mary Ann was unjust and unreasonable under the facts and circumstances of this case.·

Ind. Trial Rule 37(B) provides a trial court with sanctions it may impose upon litigants for failure to comply with discovery orders. If a party fails to obey an order to provide discovery, the court "may make such orders in regard to the failure as are just." T.R. 37(B)(2). The choice of sanction to be imposed under T.R. 37(B) is a matter within the trial court's discretion so long as the sanction imposed is "just." *See Wozniak v. Northern Indiana Public Serv.,* 620 N.E.2d 33, 36 (Ind.Ct.App.1993). While a trial court is not necessarily required to impose a lesser sanction before imposing the ultimate sanction of dismissal or default judgment, *Marshall v. Woodruff,* 631 N.E.2d 3, 5 (Ind.Ct. App.1994), this court has cautioned that such extreme sanctions should be rarely used. *See Mulroe v. Angerman,* 492 N.E.2d 1077, 1079 (Ind.Ct.App.1986). Further, as the majority correctly points out, extreme sanctions such as dismissal and default judgment may be appropriate when the disobedient party has demonstrated contumacious disregard for the court's order to the extent that it has or threatens to delay or obstruct the rights of the opposing party to the extent that any other relief would be inadequate. *See Nesses v. Specialty Connectors Co., Inc.,* 564 N.E.2d 322, 327 (Ind.Ct.App.1990); *Marshall,* 631 N.E.2d at 5.

Here, it is undisputed that Mary Ann has been incapacitated since 1990 as a result of her mental illness. As a result, a guardian was appointed to protect Mary Ann and her property. Although the trial court found Mary Ann in "wilful contempt" for failing to produce or properly respond to William's motion for production, there is no evidence of record that Mary Ann personally possessed any of the requested documents or had the ability to respond to William's motion for production. Instead, it is readily apparent that Mary Ann's guardian and attorney had the responsibility of making a diligent effort to comply with the trial court's discovery orders. The record is simply devoid of any evidence that Mary Ann personally contributed to her guardian's failure to obtain the requested documents or her counsel's failure to timely respond to William's motion for production.

Further, while I acknowledge that the trial court was not required to impose a lesser sanction, there is no evidence that the trial court even considered whether less extreme sanctions would be reasonable and just under the circumstance. I believe imposition of lesser sanctions against Mary Ann's guardian and/or attorney would not have been fruitless or added to William's frustration but would have brought about compliance with the trial court's discovery order. Alternatively, the trial court could have effectively achieved the same result by merely suspending William's monthly spousal maintenance support pending the production of the requested documents. Depriving an incapacitated individual of all future maintenance as a result of the failure of Mary Ann's guardian and attorney to diligently comply with William's discovery requests strikes me as "unjust" in light of these circumstances. Therefore, I believe the trial court abused its discretion in terminating spousal maintenance as a penalty for failure to comply with discovery.

I would reverse and remand to the trial court for reconsideration of the imposition of a just sanction.